455 So.2d 1168 (1984)
Norman C. FRANCIS, et al
v.
Ernest N. MORIAL, et al.
No. 84-CA-0159.
Supreme Court of Louisiana.
September 10, 1984.
*1169 Mack E. Barham, John Whitney, Thomas G. Gruenert, Barham & Churchill, George W. Reese, Charles H. White, New Orleans, for plaintiffs-appellees.
H.A. Vondenstein, Parish Atty., James S. Arceneaux, Asst. Parish Atty., George Giacobbe, Kenner, Harry J. Morel, Jr., Dist. Atty., Steve Griffith, Asst. Dist. Atty., William J. Guste, Jr., Atty. Gen., Kendall L. Vick, Asst. Atty. Gen., Melissa F. Keegan, Staff Atty., New Orleans, for defendant-appellants.
Salvador Anzelmo, City Atty., Thomas W. Milliner, Deputy City Atty., for Defendant-Appellees.
DENNIS, Justice.
We are called upon to decide whether an act of the legislature altering the procedure for selecting members of a home rule municipality's administrative board should be upheld as necessary to prevent abridgement of a reasonable exercise of the state's police power or stricken as an interference with local deployment of home rule charter powers and functions prohibited by the state constitution. A suit was brought by the present members of the municipal board to have the statute declared unconstitutional and to enjoin its enforcement. After a hearing, the trial court declared the act unconstitutional and permanently enjoined its implementation. The attorney general intervened to assert and protect the rights and interests of the state, La. Const., Art. IV, § 8, and appealed directly to this court. La.Const, Art. V, § 5(D). We affirm. The Louisiana Constitution of 1974 delegates powers and functions to home rule charter governments and grants them the discretion to deploy their powers and functions on the local level. The legislature by a general law may deny or revoke the initial delegation of home rule powers and functions; no law may revoke, change or affect a home rule government's discretion to deploy its powers and functions, however, unless it is necessary to prevent an abridgement of the reasonable exercise of the state's police power. The act of the legislature in the present case is prohibited *1170 by the constitution because it changes the distribution and organization of home rule powers and functions and is not reasonably necessary and appropriate for the accomplishment of a legitimate object of the police power.
The City of New Orleans, located in the parish of Orleans, owns and operates an airport located in the City of Kenner and the parishes of Jefferson and St. Charles. The New Orleans home rule charter establishes an aviation board consisting of five members to be appointed by the Mayor with the approval of the city council. The charter provides that the functions of the board shall be to administer, operate and maintain all city airports, represent the City in all aeronautical consultations with state, national or international agencies, and appoint an Aviation Director to serve at its pleasure. Charter § 5-702. Before adoption of the 1974 Louisiana Constitution, the legislature by Act 424 of 1972 expanded the board to nine members and prescribed, in effect, that two members must either reside or have a business located in Jefferson and St. Charles Parishes. The constitutionality of this change in composition and residence or principal place of business requirement is not challenged by this lawsuit.
The act in question in this case, Act 25 of 1983, amended and reenacted the prior law by changing and affecting the membership of any airport board of a city located outside the parochial site of its airport, in pertinent part, as follows: (a) the board shall include one additional member, to be appointed by the mayor and approved by the governing authority, from a list of two names submitted by the chief executive of each parish in which the airport is located; (b) if the airport is located within a municipality, the board shall include two additional members to be appointed from a list of four names submitted by the mayor of the municipality in which any part of the airport is located; (c) if the mayor of the city which owns the airport fails to make the appointments timely upon receipt of the lists or if the governing authority fails to approve his appointments timely, the chief executives and the mayor submitting the lists shall make the appointments with approval of their respective governing authorities.
New Orleans is the only city affected by this legislation. In effect, the statute permits the City of Kenner, the Parish of Jefferson and the Parish of St. Charles to choose four of the nine members of the New Orleans aviation board.
Before any appointments were made pursuant to the act, the members of the New Orleans Aviation Board brought this suit to have the statute declared unconstitutional. After a hearing, the trial court declared the statute unconstitutional and enjoined its enforcement. In oral reasons for judgment, the trial court declared the act unconstitutional as an invasion of a home rule charter which changed and affected the structure and organization of the local government. The attorney general intervened and appealed.
Article VI of the 1974 Louisiana Constitution promotes the autonomy of home rule governments by delegating to them broad revocable powers and functions. Section 4 permits each preexisting home rule charter government to retain the powers, functions and duties in effect in its charter when the constitution was adopted, except as inconsistent with the constitution, and to add to its charter any power or function granted by the constitution to other local governments if its charter permits.[1] Section 5 sets forth procedures by which a home rule charter may be adopted and authorizes a home rule government to assume *1171 any power or function necessary, requisite or proper for the management of its affairs, not denied by general law or inconsistent with the constitution.[2] Consequently, a home rule charter government possesses, in affairs of local concern, powers which within its jurisdiction are as broad as that of the state, except when limited by the constitution, laws permitted by the constitution, or its own home rule charter.
The constitution in article VI also fosters local self-government by granting to home rule bodies the discretion to deploy their powers and functions on the local level, which may not be revoked, changed or affected by law unless necessary to prevent an abridgement of the reasonable exercise of the state's police power. Section 6 provides that no law shall change or affect the structure and organization or the particular distribution and redistribution of the powers and functions of such local governments.[3] Section 9(B) provides that, notwithstanding any provision of Article VI, the police power of the state shall never be abridged. In the present case, the tension between home rule discretion and state police power calls upon us to reach a more complete understanding of these concepts in order to accommodate these constitutionally protected interests.
Section 6 was added to the local government article to protect home rule charter governments from unwarrantable interference in their internal affairs by state government. It is clear from the convention proceedings and the words of Section 6 that it was intended to prevent the legislature from substituting its judgment for that of the home rule government with respect to the arrangement of the various offices, departments, agencies and elements of the local government, and as to the assignment, allocation or distribution of purposes, work, authority and capacities among them. Unless the constitution elsewhere provides justification for such an intrusion, any state law which changes or affects, i.e., produces an alteration in or material influence upon, the local government's structure and organization or the *1172 distribution or redistribution of its powers and functions is prohibited. VII Records of the Louisiana Constitutional Convention of 1973: Convention Transcripts 1341, 1361 [hereinafter referred to as Records]. See also Murchison, Developments in the Law, 1982-1983Local Government Law, 44 La. L.Rev. 373, 389 (1983); Murchison, Developments in the Law, 1979-1980Local Government Law, 41 La.L.Rev. 483, 485 (1981); Kean, Local Government and Home Rule, 21 Loy.L.Rev. 63, 66 (1975); Comment, Exclusive Powers of Louisiana Home Rule Municipalities and Parishes, 23 Loy.L. Rev. 961 (1977).
As a counterbalance, to preclude the danger that the powers and defenses afforded local government would be used to deprive the state government of its necessary inherent powers, Article VI, Section 9(B) provides that "[n]otwithstanding any provision of this Article, the police power of the state shall never be abridged." This provision is almost identical to formulations set forth in the 1913, 1918, and 1921 Louisiana constitutions.[4] After tentatively adopting a different, perhaps more expansive affirmation of police power[5], the framers of the 1974 Louisiana constitution ultimately opted to retain the traditional language and its more settled meaning.[6]
The decisions of this court and others establish principles governing the exercise of the police power and the prevention of its abridgement with which the delegates were familiar. Although the police power is not susceptible to precise definition except on a case by case basis, it has been described generally as the inherent power of the state to govern persons and things, within constitutional limits, for the promotion of general security, health, morals and welfare. Fernandez v. Alford, 203 La. 111, 13 So.2d 483 (1943); State v. Malory, 168 La. 742, 123 So. 310 (1929); VII Records 1445 (statement of Delegate Avant), 1454 (statement of Delegate Casey). The police power extends only to such measures as are reasonable, however, and all police regulations must be reasonable under all the circumstances. Schwegmann Bros. v. La. Bd. of Alcoholic Bev. Control, 216 La. 148, 43 So.2d 248 (1949); VII Records 1446 (statement of Delegate Avant). In order for a police measure to be reasonable, the means adopted must be reasonably necessary and appropriate for the accomplishment of legitimate objects falling within the scope of the power. Schwegmann Bros. v. La. Bd. of Alcoholic Bev. Control, 216 La. 148, 43 So.2d 248 (1949). Accordingly, the measure must tend toward the accomplishment or promotion of such purpose in a degree that is reasonably perceptible and clear. Id.; City of New Orleans v. Southern Auto Wreckers, 193 La. 895, 192 So. 523 (1939); Barrett v. State, 220 N.Y. 423, 116 N.E. 99 (1917); State ex rel. Wilcox v. Gilbert, 126 Minn. 95, 147 N.W. 953 (1914); St. Louis Southwestern Ry. Co. of Texas v. Griffin, 106 Tex. 477, 171 S.W. 703 (1914). To sustain legislation under the police power, the courts must be able to see that its operation tends in some degree to prevent an offense or evil or otherwise to preserve *1173 public health, morals, safety or welfare, Eros v. Powell, 137 La. 342, 68 So. 632 (1915); Hi-Lo Oil Co. v. City of Crowley, 274 So.2d 757 (La.App.3d Cir.), writ refused, 277 So.2d 673 (La.1973), and if a statute discloses no such purpose, has no real or substantial relation to these objects, or is a palpable invasion of rights secured by fundamental law, it is the duty of the courts so to adjudge and thereby give effect to the constitution. Id.; State ex rel Galle v. N.O., 113 La. 371, 36 So. 999 (1904). It is only because the welfare of the whole people so far outweighs the importance of the individual whose rights are interfered with by an exercise of the police power that such interference with constitutional guarantees can be justified. See City of Shreveport v. Curry, 357 So.2d 1078 (La. 1978); Appeal of Meserve, 120 N.H. 461, 417 A.2d 11 (1980); Town of Bay Harbor Islands v. Schlapik, 57 So.2d 855 (Fla. 1952); 16A Am.Jur.2d, Constitutional Law, § 415. To be truly in the public welfare, therefore, legislation must confer upon the public benefits commensurate with its burdens upon other protected interests. Banjavich v. La. Licensing Bd. for Marine Divers, 237 La. 467, 111 So.2d 505 (1959); Direct Plumbing Supply Co. v. City of Dayton, 138 Ohio St. 540, 38 N.E.2d 70 (1941); 16A Am.Jur.2d, Constitutional Law, § 415. The police power does not justify an interference with constitutional rights which is entirely out of proportion to any benefit redounding to the public. Myers v. City of Defiance, 67 Ohio App. 159, 36 N.E.2d 162 (1940); Am.Jur.2d, Constitutional Law, § 415.
It is therefore self-evident that Article VI of the 1974 Louisiana constitution strikes a different balance of power between the state legislature and home rule governments than that which existed under previous constitutions. Home rule entities must be regarded as more than creatures of the legislature, since their powers and functions are granted directly by the constitution and their discretion of deployment is constitutionally preserved against undue interference. Kean, supra at 66; Murchison, supra 41 La.L.Rev. 483, at 487-88. Home rule abilities and immunities are bestowed by the constitution in terms too full and general to warrant narrow construction of them by the courts. Kean, supra at 66. The framers also regarded the principles which courts have developed in accommodating individual rights with the state's exercise of its police power as analogously applicable to the resolution of conflicts between police measures and the new constitutionally protected rights of home rule governments. E.g., VII Records 1446 (statement of Delegate Avant). This transformation in the constitutional philosophy of local government calls for a corresponding adjustment in the judicial attitude toward home rule prerogatives. VII Records 1363-71; City of New Orleans v. State, 426 So.2d 1318, 1322 (La. 1983) (concurring opinion); City of Shreveport v. Kaufman, 353 So.2d 995 (La.1977); Kean, supra; Murchison, supra. Hence, it is appropriate that home rule powers, functions and immunities should be construed fairly, genuinely and reasonably and any claimed exception to them should be given careful scrutiny by the courts. VII Records 1415-16.
Applying these precepts to the case at hand, we conclude that the trial court correctly declared Act 25 of 1983 unconstitutional because (a) the act purports to change the New Orleans home rule charter's distribution of powers and functions pertaining to the selection and appointment of aviation board members in violation of Article VI, Section 6, and, (b) the act does not constitute a reasonable exercise of police power under Article VI, Section 9(B) so as to qualify as an exception to the prohibition against state interference with home rule discretion.
Act 25 of 1983, in effect, authorizes the chief executive officers of the City of Kenner, Jefferson Parish and St. Charles Parish to select four of the nine members of the New Orleans Aviation Board. Prior to this act only duly elected officers of the City of New Orleans were authorized to participate in selecting members of the *1174 board which administers the city's airports. The act therefore clearly purports to change the home rule government's distribution of the power and the function of selecting four board members by redistributing this faculty to public officials of other local governments. Enforcement of the act probably also would affect or materially influence the organization of the city's aviation board by installing thereon a large minority contingent representing three other local governments. It is needless for us to consider whether the statute affects home rule structure and organization, however, because the act clearly changes the distribution of home rule powers and functions.
Considering all of the circumstances, it is not reasonably clear that Act 25 of 1983 constitutes a reasonable exercise of the state's police power. We are unable to see that its operation would tend in some degree to prevent an offense or evil or otherwise to preserve public health, morals, safety or welfare. It is, of course, possible to conceive of legislation affecting airports or a reasonable classification of airports that reasonably may be necessary and appropriate to promote objects within the ambit of the police power. Act 25 of 1983, however, discloses no such purpose and does not appear to have any real or substantial relation to these objects; it merely redistributes the power and function of selecting a minority of the aviation board from the New Orleans officials to those of three other local governments. Even if we were to assume that the act would tend toward the accomplishment of a valid police power object in some slight degree, the small public benefit which might be conferred would not be commensurate with the interference and burdens placed on the home rule government.
In addition to arguments on the foregoing issues, the attorney general contends that Act 25 of 1983 is constitutional because it is a general, not a local or special, law. Implicitly, his rationale is as follows: Article VI, Section 5(E) provides that the legislature may by general law deny home rule governments any power or function authorized therein; Act 25 of 1983 is a general law; therefore, Act 25 of 1983 constitutionally denies powers and functions to the home rule government.
Act of 25 of 1983 does not deny any power or function originally delegated to the home rule government, however. It does not take away the City's power to administer its airports through an aviation board. Instead, it changes the distribution of this power and function at the local level. Even if we assume that the law is a general one, a matter regarding which there is reason for doubt, it is prohibited because it changes a home rule government's distribution of its powers and functions in violation of Article VI, Section 6. In order for a law changing or affecting a local government's deployment of its powers and functions on the local level to be sustained by the courts, the act must be necessary to prevent abridgement of a reasonable and valid exercise of the state's police power. Since we have determined that Act 25 of 1983 does not constitute such a law, there does not appear to be any basis upon which it can be sustained.
Accordingly, the judgment of the trial court declaring Act 25 of 1983 unconstitutional and enjoining its enforcement is affirmed.
AFFIRMED.
WATSON, J., concurs and assigns reasons.
WATSON, Justice, concurring.
I join in the reasons assigned by the majority, but would add that the City of New Orleans owns the airport just as it owns Audubon Park. Therefore, a similar issue is presented and should be decided with the same result as in City of New Orleans v. State, 443 So.2d 562 (La., 1983).
NOTES
[1] Section 4: Every home rule charter or plan of government existing or adopted when this constitution is adopted shall remain in effect and may be amended, modified, or repealed as provided therein. Except as inconsistent with this constitution, each local governmental subdivision which has adopted such a home rule charter or plan of government shall retain the powers, functions, and duties in effect when this constitution is adopted. If its charter permits, each of them also shall have the right to powers and functions granted to other local governmental subdivisions.
[2] Section 5:

(A) Subject to and not inconsistent with this constitution, any local governmental subdivision may draft, adopt, or amend a home rule charter in accordance with this Section. The governing authority of a local governmental subdivision may appoint a commission to prepare and propose a charter or an alternate charter, or it may call an election to elect such a commission.
(B) The governing authority shall call an election to elect such a commission when presented with a petition signed by not less than ten percent of the electors or ten thousand electors, whichever is fewer, who live within the boundaries of the affected subdivision, as certified by the registrar of voters.
(C) A home rule charter shall be adopted, amended, or repealed when approved by a majority of the electors voting thereon at an election held for that purpose.
(D) Two or more local governmental subdivisions within the boundaries of one parish may adopt a home rule charter under this Section if approved by a majority of the electors in each affected local governmental subdivision voting thereon in an election held for that purpose. The legislature shall provide by law the method of appointment or election of a commission to prepare and propose a charter consistent with Paragraph (A) of this Section and the method by which the electors may petition for an election consistent with Paragraph (B) of this Section. However, at least one member of the commission shall be elected or appointed from each affected local governmental subdivision.
(E) A home rule charter adopted under this Section shall provide the structure and organization, powers, and functions of the government of the local governmental subdivision, which may include the exercise of any power and performance of any function necessary, requisite, or proper for the management of its affairs, not denied by general law or inconsistent with this constitution.
(F) Except as prohibited by its charter, a local governmental subdivision adopting a home rule charter under this Section shall have the additional powers and functions granted to local governmental subdivisions by other provisions of this constitution.
(G) No home rule charter or plan of government shall contain any provision affecting a school board or the offices of district attorney, sheriff, assessor, clerk of a district court, or coroner, which is inconsistent with this constitution or law.
[3] Section 6: The legislature shall enact no law the effect of which changes or affects the structure and organization or the particular distribution and redistribution of the powers and functions of any local governmental subdivision which operates under a home rule charter.
[4] 1898 and 1913 La. Const., Art. 263, provided:

"The exercise of the police power of the state shall never be abridged nor so construed as to permit corporations to conduct their business in such manner as to infringe the equal rights of individuals or the general well-being of the State."
1921 La. Const., Art. XIX, § 18, provided: "The exercise of the police power of the State shall never be abridged."
[5] "Notwithstanding any provision of any plan of local government or any home rule charter, or other provision of this article, the legislature may by general law applicable throughout the state or based upon any reasonable classification exercise the police power of the state in the parishes, municipalities, and other local governmental subdivisions of the state." VII Records 1445.
[6] See VII Records 1445-60. Delegate Burson set forth the concerns of the delegates prompting them to adopt the present language of Section 9(B) when saying that the language "was taken verbatim from the present constitution. It has a well defined historical meaning. It seems to me that we ought to be very careful, indeed before we adopt new language, undefined, that is so broad sweeping that it would easily be open to the interpretation of an all encompassing central power." VII Records 1455.