548 So.2d 915 (1989)
BAYOU CANE VOLUNTEER FIRE DEPARTMENT
v.
TERREBONNE PARISH CONSOLIDATED GOVERNMENT, Terrebonne Parish Council, Teddy Dune and Harris Henry.
No. 89-CA-0982.
Supreme Court of Louisiana.
September 12, 1989.
Rehearing Denied October 12, 1989.
*916 Robert B. Butler, III, Houma, for appellant.
James Funderburk, Vincent Dagate, Jr., Houma, for appellee.
William J. Guste, Jr., Atty. Gen., Jesse James Marks, Lois C. Davis, Anne F. Benoit, Asst. Attys. Gen., Intervenors.
COLE, Justice.
This matter comes before the Court on direct appeal pursuant to La. Const. Art. V,
§ 5(D). At issue is the constitutionality of R.S. 40:1504, 1987 La.Acts 454, which deals with the allocation of fire district tax revenues in Fire District 1, 2, 3 located in Terrebonne Parish. The Bayou Cane Volunteer Fire Department (Bayou Cane) brought suit to enjoin enforcement of a parish ordinance that contained provisions contrary to the statute. The Terrebonne Parish Consolidated Government (Parish) which serves as the governing body of Fire District 1, 2, 3 reconvened, seeking a declaratory judgment that R.S. 40:1504 is unconstitutional. After a trial on the merits, the district court held R.S. 40:1504 is unconstitutional under Article VI, § 6 of the state constitution as an unwarranted interference with the powers of a home rule government. We disagree and, accordingly, we reverse the trial court and affirm the constitutionality of the statute.

I. FACTS
In 1975, pursuant to R.S. 40:1492, the Terrebonne Parish Police Jury created Fire Protection District 1, 2, 3. The district was established to coordinate and fund the various volunteer fire departments serving rural areas. As authorized by R.S. 40:1495, the police jury served as the governing authority for the fire district. In 1982, the police jury divided District 1, 2, 3 into five zones: A, B, C, D and E. In 1984, the Parish adopted a home rule charter and the new Terrebonne Parish Consolidated Government took over as the governing authority for the Fire District.
In 1986, by ordinance, the Parish proposed a five mill ad valorem property tax for the support of the volunteer fire departments in Fire District 1, 2, 3. See Terrebonne Parish Ordinance No. 3884 (August 19, 1986). The millage tax passed and a four mill tax was actually levied. Ordinance 3884 also created a formula for allocating the tax revenues among the various fire departments serving the zones of Fire District 1, 2, 3. Id. In 1987, the legislature passed Act 454.[1] In essence, Act 454 requires the Parish, the governing body of *917 the fire district, to use tax revenues collected for fire protection in zones A, B and D of Fire District 1, 2, 3 only within the respective zone where collected. The statute makes no mention of zones C and E.
The Parish made no effort to comply with the statute. Bayou Cane, the fire department serving zone B of District 1, 2, 3 brought suit for declaratory and injunctive relief to compel the Parish to allocate millage tax revenues according to the provisions of Act 454. The Parish filed a reconventional demand and then an Amended Petition seeking a declaratory judgment that Act 454 of 1987 is unconstitutional. After trial on the merits, the trial court ruled in favor of the Parish and declared the act unconstitutional. Bayou Cane appeals.

II. ISSUES
The single issue presented in this case is whether Act 454 of 1987 is unconstitutional. The Parish, however, challenged the statute on two grounds. Thus, we are presented with the questions:
1) Whether Act 454 is unconstitutional as a local or special law contrary to La. Const. Art. III, § 12; and
2) Whether Act 454 is unconstitutional as a law affecting the powers and functions of a home rule charter government contrary to La. Const. Art. VI, § 6.

III. ANALYSIS
A. Local or Special Law
We have little difficulty in finding Act 454 of 1987 does not violate the prohibition of Article III, § 12 of the Louisiana Constitution against "local or special" laws. It is true that Act 454 clearly meets the initial test for a "local law" set out in State v. LaBauve since "its operation is limited solely by its designation of certain parishes." 359 So.2d 181, 183 (La.1978). Article III, § 12, however, does not prohibit the legislature from passing any kind of local or special law. Rather, the legislature is forbidden to pass local or special laws concerning clearly specified subjects.[2] In LaBauve, for example, the "local law" found unconstitutional was a criminal statute and thus specifically prohibited by Article III, § 12(A)(10). In this case, Act 454 deals with the apportionment of tax revenues among the zones of a state fire protection district; it falls into none of the categories of proscribed local laws. Moreover, as discussed below, Act 454 is a local law of the kind specifically authorized by La. Const. Art. VI, § 19. Therefore, we conclude Act 454 is not unconstitutional as violative of Article III, § 12.
B. Interference with Home Rule Charter Government
A more difficult question is whether Act 454 violates La. Const. Art. VI, § 6:
The legislature shall adopt no law the effect of which changes or affects the structure and organization or the particular distribution and redistribution of the powers and functions of any local governmental subdivision which operates under a home rule charter.
*918 The primary purpose of Section 6 is "to protect home rule charter governments from unwarrantable interference in their internal affairs by state government." Francis v. Morial, 455 So.2d 1168, 1171 (La.1984); see also Kean, Local Government and Home Rule, 61 Loyola L.Rev. 63, 66 (1975). The trial court found Act 454 violated the terms of Section 6 by effecting a "redistribution of the powers and functions" of the Terrebonne Parish home rule charter government. We disagree.
By its express language, Article VI, § 6 applies only to laws that change or affect the operations of a home rule charter government. R.S. 40:1504, on the other hand, applies to a fire district which is a special district created by the legislature under its Article VI, § 19 powers.[3] When R.S. 40:1504 is viewed in its statutory context, a clear pattern of legislative supervision emerges. R.S. 40:1492 permits parish governing authorities to create fire districts "subject to the limitations and restrictions" imposed by the legislature. R.S. 40:1492(C) expressly states that fire districts created by parishes "are subdivisions of the state," at least for the purpose of laws pertaining to taxation and bonded indebtedness. See also Winn v. City of Kenner, 225 So.2d 662, 663 (La.App. 4th Cir.1969) (fire protection districts are subdivisions of state). R.S. 40:1495 permits, but does not require, a parish governing body to serve as the governing authority for the fire district as well. R.S. 40:1500 makes fire districts state-created public corporations. Finally, the legislature has exercised its supervisory powers over other individual fire districts. See, e.g., R.S. 40:1502, 1502.1-1502.7, 1503. These provisions are "local" or "special" laws specifically authorized by Article VI, § 19.
There is no merit in the Parish's argument that the governance of Fire District 1, 2, 3 is a purely local matter falling totally within the ambit of its home rule charter powers over purely local affairs. Fire control is a proper function of the State's police power,[4] and Fire District 1, 2, 3 was created by the Parish pursuant to the legislature's grant of this power. The Legislature's decision to permit local governments to create fire districts and, in certain cases, to serve as a district's governing authority, does not render the fire districts local home rule entities. We see no constitutional infirmity in a legislative plan for fire protection that provides for local administration subject to legislative control. Fire District 1, 2, 3 was not transformed into a purely local entity by the Parish's election under R.S. 40:1495 to have the parish governing body serve as the governing body of the fire district. Rather, Fire District 1, 2, 3 remained a state entity and when the Parish government acts in its capacity as a fire district "commission," it is serving as a local administrative body for a special district of the State. Therefore, it is a mischaracterization to equate Fire District 1, 2, 3 with Terrebonne Parish even though the two share the same geographic boundaries. See Board of Directors of Louisiana Recovery District v. All Taxpayers, Property Owners and Citizens of the State of Louisiana, 529 So.2d 384 (La.1988).
In Louisiana Recovery District, we specifically affirmed the legislature's power to create districts for special purposes under Article VI, § 19. In so holding, we also noted the strong presumption of validity enjoyed by acts of the legislature, particularly those relating to taxation and public finance. 529 So.2d at 387. Like the Louisiana *919 Recovery District, Fire District 1, 2, 3 is a "special district" created under Article VI, § 19 which is classified as a "political subdivision" of the state and thus subject to legislative control. Id. at 388. The legislature enjoys "plenary power" to create such districts and to vest them with the powers it deems appropriate." Id. at 389. This plenary power clearly authorizes a law like Act 454 which deals with the apportionment of tax funds raised for fire protection purposes within a special state fire protection district.
The Parish also contends that Act 454 unconstitutionally interferes with its exercise of its home rule powers under the balancing test set forth in Francis v. Morial, 455 So.2d 1168 (La.1984). In particular, it argues the act interferes in local affairs by requiring the Parish to alter the method by which it collects its taxes. We find this contention is without merit. First, we need not reach the balancing test here. Act 454 regulates a state entity, i.e., a fire district. Nothing in Francis requires the balancing of state and local interests with regard to a district created by the exercise of power delegated by the state and over which the state expressly retains supervisory control. The "effect" of which the Parish complains exists only because the Parish chose to govern itself and Fire District 1, 2, 3 as a single entity. In fact, Act 454 affects only the allocation of specified tax revenues within Fire District 1, 2, 3 not within Terrebonne Parish. Therefore, unlike in Francis, we are not confronted with a case where the legislature is "substituting its judgment for that of a home rule government" with respect to matters of local concern. Francis, 455 So.2d at 1171. Finally, even assuming R.S. 40:1504 has an incidental impact on the local matter of tax collection, this impact is justified by the state's authorization for the creation and government of special districts under La. Const. Art. VI, § 19. Absent clear and convincing evidence that it was the "constitutional aim to deny the legislature the power to enact the statute," the constitutionality of the act must be upheld. Louisiana Recovery District, 529 So.2d at 388.
Even if a balancing of state and local interests were required here, the competing interests clearly preponderate in the state's favor. Fire control in rural areas, though a matter of local concern, is within the police power of the state. Also, the statute authorizing the creation of fire districts expressly provides for continued legislative control of "levying of special maintenance taxes, incurring debt, and issuing bonds therefor." R.S. 40:1492. Act 454 deals with the apportionment of "special maintenance taxes" and thus is properly viewed as an exercise of this expressly reserved power. Finally, as we recently observed, it is eminently proper for the legislature to require "that revenues be spent only upon the public purpose for which they were collected." Louisiana Recovery District, 529 So.2d at 390. Act 454 furthers a similar goal by requiring fire protection tax revenues to be used to provide fire protection in the zones where they were collected. Against these state interests, the Parish offers evidence only in support of its claim that Act 454 will require a modification of its tax collection procedure. There is no evidence in the record to justify the redistribution "formula" adopted by Ordinance 3884 for apportioning revenues among the various zones of Fire District 1, 2, 3. On the record before us, we readily conclude the state's interest in the apportionment of tax revenues in Fire District 1, 2, 3 outweighs the concern of the Parish about the incidental impact of Act 454.
The Parish also points to various alleged deficiencies in the statute and urges these as grounds for a declaration of unconstitutionality. The fact that a statute is poorly drafted or incomplete does not render it unconstitutional. In addition, many of the purported defects of Act 454 argued by the Parish do not really exist. Despite the Parish's argument to the contrary, Act 454 specifies the taxes to be allocated among the zones of Fire District 1, 2, 3. It specifically deals with revenues from taxes levied "solely for the purpose of fire protection." R.S. 40:1504. Second, the "zones" referred to in the act are not undefined *920 as the Parish asserts. On the contrary, they have been specifically defined by the fire district's own governing authority, the Parish. While it is disturbing that Act 454 omits zones C and E of Fire District 1, 2, 3 from its scope, this is not a constitutional problem but a matter that should be corrected by the legislature. Finally, as noted above, it is immaterial that the Parish allegedly collects most of its own taxes on the basis of wards rather than fire district zones.[5] To hold otherwise would be to equate the fire district with the parish contrary to the statutory scheme.

IV. CONCLUSION AND DECREE
In short, we find the Parish failed to meet its burden of proving the unconstitutionality of Act 454 of 1987 by clear and convincing evidence. Act 454 is not a "local law" that falls within the prohibited categories of La. Const. Art. III, § 12. Nor does the statute impermissibly infringe upon the local affairs of a home rule government contrary to Article VI, § 6. Rather, Act 454 is a permissible local law dealing with the allocation of specific tax revenues within Fire District 1, 2, 3, a political subdivision of the state authorized by the legislature under the broad powers given it under Article VI, § 19.

* * * * * *
The judgment of the trial court declaring Act 454 of 1987 unconstitutional is therefore reversed. A declaratory judgment is hereby rendered upholding the constitutionality of the statute. Costs are assessed against Terrebonne Parish as permitted by law.
REVERSED AND RENDERED.
NOTES
[1] Act 454 appears in the Revised Statutes as 40:1504. It provides:

A. Any monies derived from taxes levied within Zone A of Fire Protection District No. 1, 2, 3 of Terrebonne Parish by the governing authority of Terrebonne Parish or by the governing authority of said fire protection district solely for the purpose of fire protection shall be used solely for the purpose of providing such fire protection within said Zone A.
B. Any monies derived from taxes levied within Zone B of Fire Protection District No. 1, 2, 3 of Terrebonne Parish by the governing authority of Terrebonne Parish or by the governing authority of said fire protection district solely for the purpose of fire protection shall be used solely for the purpose of providing such fire protection within said Zone B.
C. Any monies derived from taxes levied within Zone D of Fire Protection District No. 1, 2, 3 of Terrebonne Parish by the governing authority of Terrebonne Parish or by the governing authority of said fire protection district solely for the purpose of fire protection shall be used solely for the purpose of providing such fire protection within said Zone D.
[2] E.g., pertaining to the conduct of elections, name changes, adoptions, wills, pending litigation, the opening or closing of streets, the exemption of property from taxation, regulation of labor or trade, special privileges for private corporations, regulation of city or parish schools, the ratifications of invalid acts, the definition of a crime. See La. Const. Art. III, § 12(A)(1)-(10).
[3] La. Const. Art. VI, § 19 provides:

Subject to and not inconsistent with this constitution, the legislature by general law or by local or special law may create or authorize the creation of special districts, boards, agencies, commissions, and authorities of every type, define their powers, and grant to the special districts, boards, agencies, commissions, and authorities so created such rights, powers, and authorities as it deems proper, including, but not limited to, the power of taxation and the power to incur debt and issue bonds.
[4] See State ex rel Fire District of LeMay v. Smith, 353 Mo. 807, 184 S.W.2d 593 (1945) at 595. In LeMay, the Missouri Supreme Court upheld the legislative creation of fire districts under the state's police power against a challenge to the act as a constitutionally impermissible local law.
[5] Gene Bonvillain of the Parish Assessor's office admitted that not all tax collection in the parish follows ward lines. Fire District 1, 2, 3 itself excludes that portion of Ward 3 that lies within the city limits, and at least one special recreation district cuts across ward lines and is thus assessed on a non-ward basis.