Dear Councilman Wells:
In your capacity as Chairman of the Consolidated Drainage District #1 of Tangipahoa Parish (District) you have requested an opinion as to whether members of the Tangipahoa Parish Council, who ex-officio constitute the board of commissioners of the District, may be paid a per diem for their service as a board member.
The District's creation was authorized by the adoption of Act 19 of the Second Extraordinary Session of the Legislature of 1950. The act provided that the members of the Tangipahoa Parish Police Jury would ex-officio constitute the board of commissioners. Act 182 of the 1992 Regular Session of the Legislature amended Act 19 to provide, in part, as follows:
 ". . . The members of the board of Consolidated Gravity District No. One shall be compensated as provided in and subject to R.S. 38:1794
(B) for commissioners of gravity drainage districts." . . .
Section 2-06 of the Home Rule Charter For A Council-President Government For Tangipahoa Parish provides:
 A. A council member shall hold no other elected public office, nor be a compensated official or employee of the Parish government or any of its political subdivisions during the term for which elected to the council and no former council member shall hold any compensated appointive office or employment of the Parish government or any of its political subdivisions until one (1) year after the expiration of the term for which elected to the council. Nothing in this section shall prohibit a council member from serving as a member of a charter commission, constitutional convention or political party committee.
Contemporaneously, the ex-officio police jury members and parish council members of the board have been compensated since its creation.
It would appear that Act 182 of 1992 and Section 2-06 are in direct conflict with each other. The Home Rule Charter was adopted by the electors of Tangipahoa Parish pursuant to ArticleVI, Section 5 of the Louisiana Constitution which is the general authority for establishment of home rule charters.
Article VI, Section 6 of the Louisiana Constitution prohibits the Legislature from enacting laws that change the structure and organization or distribution of powers and functions that are provided under a home rule charter. However, the Legislature still may adopt laws concerning the powers and functions of home rule charter local governing bodies.
In the opinion rendered by the Louisiana Supreme Court in Francis v. Morial, 455 So.2d 1168, it was stated that Article VI
of the Louisiana Constitution provides that local governments may adopt home rule charters which authorize the local government to assume powers and functions for the management of their affairs:
 Section 6 was added to the local government article to protect home rule charter governments from unwarrantable interference in their internal affairs by state government. It is clear from the convention proceedings and the words of Section 6 that it was intended to prevent the legislature from substituting its judgment for that of the home rule government with respect to the arrangement of the various offices, departments, agencies and elements of the local government, and as to the assignment, allocation or distribution of purposes, work, authority and capacities among them. Unless the constitution elsewhere provides justification for such an intrusion, any state law which changes or affects, i.e., produces an alteration in or material influence upon, the local government's structure and organization or the distribution or redistribution of its powers and functions is prohibited.
* * * * * *
 As a counterbalance, to preclude the danger that the powers and defenses afforded local government would be used to deprive the state government of its necessary inherent powers, Article VI, Section 9(B) provides that "[n]notwithstanding any provision of this Article, the police power of the state shall never be abridged." This provision is almost identical to formulations set forth in the 1913, 1918, and 1921 Louisiana constitutions. After tentatively adopting a different, perhaps more expansive affirmation of police power, the framers of the 1974 Louisiana Constitution ultimately opted to retain the traditional language and its more settled meaning. (455 So.2d 1171, 1172)
The language of Act 182 does not pertain to the arrangement of offices, departments, agencies and elements of the Government of Tangipahoa Parish. Nor does it regulate the assignment, allocation, or distribution of work, authority and capacities among those offices, departments, agencies or elements of the local government.
Thus, it would appear that the Legislature, through a valid exercise of its police power, did not unconstitutionally intrude upon the authority of a local government through the enactment of Act 182 of 1992. Therefore, it is the opinion of this office that in accordance with Act 182 the parish councilmen who are ex-officio members of the Board of Commissioners of Gravity Drainage District #1 of Tangipahoa Parish may receive per diem in addition to the compensation they receive as members of the parish council.
Very truly yours,
 RICHARD P. IEYOUB Attorney General
 BY: KENNETH C. DEJEAN Assistant Attorney General
RPI:KCD:ams 1514y