Dear Mr. Sisson:
You have requested an opinion from this office regarding various issues raised in a letter you received from counsel for the Louisiana Associated General Contractors, Inc. Through your request does not specifically set forth the issues you want addressed, based on your request and conversation with Department of Transportation and Development Counsel, we will attempt to address the following issues:
 1) Does the bid process pertaining to a particular project of the New Orleans Aviation Board violate the terms of the terms of the "stipulation" entered into by the DOTD and the Louisiana Associated General Contractors, Inc. in the case Louisiana Associated General Contractors, Inc., et al v. Neil Wagoner, Secretary of the Department of Transportation and Development, et al, Civil Action No. 90-812, Middle District of Louisiana?
 2) Is inclusion in the specifications for this project of a requirement for the payment of prevailing wages for all labor on the project valid in view of the 1988 repeal by the legislature of the state's prevailing wage law?
The "stipulation" in the Louisiana Associated General Contractors, Inc., et al v. Neil. Wagoner. et al suit provides in part:
 "The defendants (which, for the purposes of this stipulation, include the Louisiana Department of Transportation and Development, Neil Wagoner and Francis Gilson in their official capacity, and their successors in office) agree not to implement or enforce La. R.S. 48:234 or any other state statute, regulation, policy or program which provides for race-based or gender-based bidding preferences, or which restricts or denies any person's right to bid upon, compete for, or enter into solely state-funded construction contracts with the Louisiana Department of Transportation and Development . . . ."
A mere reading of the stipulation reveals two important facts. First, the New Orleans Aviation Board is not a party to the stipulation and thus is not bound by its terms. Second, the above quoted portion of the stipulation makes clear that it pertains to "construction contracts with the Department of Transportation and Development."
You have informed us that the contracting party here is the New Orleans Aviation Board, and that the Department of Transportation and Development would not be a party to the construction contract at issue. It is therefore the opinion of this office that the "stipulation" in the suit Louisiana Associated General Contractors, Inc. et al v. Neil Wagoner, et al is not applicable to this instant matter.
Although the provisions of the "Stipulation" are not pertinent to this matter, the U.S. Supreme Court's decision in City of Richmond v. J.A. Croson, 109 S.Ct. 706 (1989), must nevertheless be considered. The D.O.T.D should inquire as to whether the New Orleans Aviation Board meets the requirements of Croson, and should refrain from any participation in the bid process unless and until the project satisfies the requirements of the Croson decision.
You have also requested that we review the inclusion in the job specifications a requirement that the contractor pay to workers employed on the project the prevailing wage rates as listed in the contract documents.
The issue of prevailing wage requirements placed in specifications for public works by political subdivisions of the state was considered at length in Louisiana Associated General Contractors, Inc., et al v. Calcasieu Parish School Board,586 So.2d 1354 (La. 1991). The court held that a school board did not have the authority to impose a Prevailing wage requirement on contracts which it entered for locally funded public works projects. Among the reasons cited by the court was that the board, ". . . does not have the police power to require Payment of a prevailing wage on its public construction projects."
It has been suggested that the holding in the above case should be distinguished from the present situation because the City of New Orleans, of which the New Orleans Aviation Board is a creature, operates under a grant of home rule authority and therefore has greater latitude than a school board in deviating from state law. However, two primary court decisions which have analyzed the authority of home rule municipalities have concluded that such charters protect the local government from state interference with the structure and organization of local government but that the police power is still explicitly reserved to state government in Louisiana Constitution of 1974, Article VI, Sec. 9, which states, "Notwithstanding any Provision of this Article, the police power of the state shall never be abridged." LaFleur v. City of Baton Rouge. 124 So.2d 374, (La.App. 1st Cir. 1960); and Francis v. Morial, 455 So.2d 1168
(La. 1984).
In Morial the court makes an effort to describe the "police power": "Although the police power is not susceptible to precise definition except on a case by case basis, it has been described generally as the inherent power of the state to govern persons and things, within constitutional limits, for the promotion of general security, health, morals and welfare." The Calcasieu case makes clear that prevailing wage requirements are part of the police power to promote the general welfare by assuring employment at fair and reasonable wages, and that such police power has been pre-empted by the state legislature and is not appropriately exercised by local government entities.
In any event, to rely upon the New Orleans Home Rule Charter with regard to this contract for public works, brings the situation almost full circle, for the Charter provides in Section 6-307(3), "All construction of public buildings of an estimated cost of more than $5,000 shall be done by contract in conformity with applicable State law."
Further, it is significant that the public funds being used for the Concourse construction project are not local funds, but rather are state funds allocated to the Department of Transportation and Development in the Capital Outlay Act (Act1137 of 1992). Section 10 of the Capital Outlay Act provides:
 ". . . All of the funds appropriated in this or any previous Capital Outlay bill for ports and levee districts, and for non state entity projects related to ports, airports, roads and flood control, shall be considered as having been appropriated directly to the Department of Transportation and Development. All of the funds herein appropriated under the name of state port commissions or districts, or levee districts, or nonstate entities for projects related to ports, airports, roads and flood control shall be administered by the Department of Transportation and Development under cooperative endeavor agreements."
D.O.T.D cannot achieve indirectly through a cooperative endeavor with the New Orleans Aviation Board what it is prohibited from doing directly by the Public Bid Law and the repeal of the Prevailing Wage Law.
Yours very truly,
 RICHARD P. IEYOUB Attorney General
 BY: GLENN R. DUCOTE Assistant Attorney General
RPI/GRD