Dear Representative Lalonde:
This office is in receipt of your letter dated December 3, 1993 requesting an opinion relative to whether the City of Baton Rouge and Parish of East Baton Rouge pursuant to its Ordinance 9601 may provide for a C-G zone for the operation of establishments involving gaming and other legalized gambling or games of chance.
As noted in your opinion request this office previously rendered Opinion No. 93-659 (a copy of which is attached hereto) which concluded that St. Charles Parish could not create gaming districts under its zoning authority. The reasoning found in that opinion is likewise applicable to Ordinance 9601 of East Baton Rouge Parish.
Additionally, you raised the question of the applicability of Article 6, Section 17 of the La. Constitution to this issue and cited an opinion issued by the East Baton Rouge Parish Attorney's office on October 20, 1993 reaching a conclusion different from that of this office.
Article 6, Section 17 provides that:
 "Subject to uniform procedures established by law, a local governmental subdivision may (1) adopt regulations for land use, zoning, and historic preservation, which authority is declared to be a public purpose; (2) create commissions and districts to implement those regulations; (3) review decisions of any such commission; and (4) adopt standards for use, construction, demolition, and modification of areas and structures. Existing constitutional authority for historic preservation commissions is retained."
The powers granted to local government subdivisions are not absolute or irrevocable. In Polk v. Edwards 626 So.2d 1128 (La. 1993) the Louisiana Supreme Court analyzed the powers granted to local governments as opposed to those retained by the state.
The Court stated:
 "Rather than granting express powers to local governmental subdivisions, the Louisiana Constitution grants broad revocable powers to local governments. Francis v. Morial, 455 So.2d 1168
(La. 1984). However, this grant of power is not absolute. Rather the powers granted are those that "are not (a) inconsistent with the 1974 constitution or (b) denied them by general legislation. Art. VI, Sections 4, 5(E), 7(A)." Shreveport v. Kaufman, 353 So.2d 995, 997 (La. 1977). Moreover, to prevent the danger that the powers afforded local government would be used to deprive the state government of its necessary inherent powers, La. Const. art. VI, § 9(B) was adopted. Francis v. Morial, 455 So.2d 1168. Article VI, § 9(B) provides that "[n]otwithstanding any provision of this Article, the police power of the state shall never be abridged." While this Court has acknowledged that the term "police power" is best defined on a case by case basis, it is generally described as the inherent power of the state to govern persons and things for the promotion of general security, health, morals, and welfare. Id. Thus, "the autonomy of local governmental subdivisions with home rule charters is limited by general legislation enacted under the State's police power." New Orleans v. State, 426 So.2d 1318, 1321 (La. 1983). Furthermore, the legislature's right to exercise police power may not be irrevocably alienated, surrendered, or abridged. Board of Comm'rs v. Dep't of Natural Resources, 496 So.2d 281, 289 (La. 1986). Although the legislature may delegate the exercise of police power, the power belongs to the state and its delegation can be recalled, abrogated, or modified. Id. Furthermore, when necessary to prevent abridgement of a reasonable and valid exercise of the state's police power, the legislature may by a general law adopted pursuant to the police power deny or revoke the initial delegation of home rule powers and functions. Francis v. Morial, 455 So.2d at 1169."
The Riverboat Economic Development and Gaming Control Act provides in La. R.S. 4:502A(4):
 "(4) Riverboats which conduct gaming activities thereon shall be licensed and supervised through the period of construction of the vessel continuing through to the operation of the vessel, and further gaming-related employees of such riverboats, gaming operators, manufacturers, suppliers, and distributors of gaming devices and equipment shall therefore be regulated, licensed, and controlled in such a manner as to accomplish and promote the above public policies in such a manner as to protect the public health, safety, morals, good order, and general welfare of our citizens." (Emphasis added)
It is clear from the reading of this statute and the Polk case that enactment of the Riverboat Act was done pursuant to the valid exercise of the state's police power.
The Parish Attorney's office in its opinion concluded that the Riverboat Economic Development and Gaming Control Act did not prevent the enactment of Ordinance 9601 as it did not recall the power to zone previously granted to the City-Parish. The opinion cited as authority Apex Oil Company v. City of Port Allen,357 So.2d 624 (La.App. 1st Cir. 1978) and Orleans Parish School Board v. City of New Orleans, 468 So.2d 709 (La.App. 1st Cir. 1985). These cases are easily distinguished from the issue at hand. In neither case is the police power of the state at issue. As noted in Apex, 357 So.2d at 626, "The terms of the Constitutional Amendment and of the statute setting up the port authority did grant some powers, which, however, are more in the nature of proprietorship than police powers." In the Orleans case the issue was whether a school board's right to decide where to locate a school prevented the parish from exercising its zoning powers. In any event, the cases cited by the Parish Attorney are not controlling. The conclusion reached by the Parish Attorney does not take into account the express provisions of La. R.S. 4:552 A B, which provide in pertinent part:
 A. The local governing authority of the parish or municipality in which the licensed berth of a riverboat is located may levy an admission fee of up to two and one half dollars for each passenger boarding or embarking upon a riverboat. For purposes of this Section, licensed berth shall mean the berth, dock, facility or boarding area from which a riverboat excursion is authorized to originate by the commission.
 B. Other than to levy the admission fee authorized by Subsection A of this Section, no local governing authority may license or regulate the operation of riverboats and the gaming operations conducted thereon. (emphasis added)
As discussed above, the Riverboat Gaming Act is an exercise of the state's police power. The legislature in exercising the police power has expressly forbidden local governing authorities from regulating the operation of riverboats and gaming operations thereon. There is no evidence of a legislative intent for zoning to be excepted from the prohibition against regulation. La. R.S. 4:552A specifically provides that the Riverboat Gaming Commission shall authorize the berth. La. R.S. 4:502A(5) gives the Riverboat Gaming Commission and Riverboat Gaming Enforcement Division of the Office of State Police the power to review architectural and construction plans.
Accordingly, for the reasons stated above and those found in opinion no. 93-659, it is the opinion of this office that the Riverboat Economic Development and Gaming Control Act, specifically La. R.S. 4:552, prohibits local regulation, by zoning or otherwise, of riverboat gaming.
Very truly yours,
 RICHARD P. IEYOUB Attorney General
 BY: STEPHEN J. LEDET Assistant Attorney General