Dear Ms. Yenni:
We are in receipt of your request for an Attorney General's opinion regarding the licensing requirements of day care centers. Specifically, you have requested an opinion on the following question:
 Does the state, through the Department of Health and Hospitals or the Department of Social Services, have the exclusive licensing authority and enforcement over day care facilities, or can the Jefferson Parish Council establish, by ordinance, a day care study committee to study the possibility of establishing comprehensive local licensing and inspection procedures of day care centers which could be adopted under the Jefferson Parish Home Rule Charter, even if such licensing requirements are equal to or greater than those adopted by the state?
The question of adopting a committee to study the possibility of establishing comprehensive local licensing and inspection procedures of day care centers in Jefferson Parish is not the real issue here. The question is whether the Jefferson Parish Home Rule Charter was in existence prior to the adoption of the 1974 Constitution, and if so, whether the charter provides for the general power to initiate legislation with regard to licensing requirements for day care centers in Jefferson Parish which are equal to or greater than those adopted by the state. If such powers were not part of the home rule charter prior to the 1974 Constitution, then the question is whether the power of the home rule government to initiate, adopt, and enforce day care licensing requirements by ordinance is necessary, requisite, or proper for the management of its affairs.
For a full understanding of the history of home rule charter forms of government, we recommend that you review the case ofCity of New Orleans v. Board of Commissioners ofthe Orleans Levee District, 640 So.2d 237 (La. 1994). In this case, the Supreme Court found that the City of New Orleans' constitutionally granted home rule powers included the power to initiate and enforce local building and zoning ordinances consistent with the constitution within the city boundaries. The court further found that the City's home rule powers also included the power of immunity from the legislature's authority to withdraw, preempt, or deny the city's power to initiate such legislation, and that the City's initiation of building and zoning ordinances to regulate the use of state land by the Orleans Levee District for the purposes alleged did not constitute an abridgment of the police power of the state. The court's finding was primarily based on the fact that the City's home rule charter was in existence prior to the adoption of the 1974 Constitution, and therefore, retained the home rule powers, functions, and duties granted by the charter, except as inconsistent with the constitution, in accordance with LSA-Const. Art. VI, § 4 (1974).
In City of New Orleans, the Louisiana Supreme Court expounded on the history of home rule charter forms of government, stating:
 Consequently, the drafters and ratifiers of the 1974 Louisiana Constitution adopted more stringent forms of home rule safeguards. These provisions grant broad powers of immunity from control by the state legislature to two classes of home rule governments when they are exercising their legislative powers as authorized by the constitution, viz., (1) to preexisting home rule municipalities and parishes when exercising within their boundaries any legislative powers not in conflict with the 1974 state constitution; and (2) to all other local governments exercising home rule powers consistently with that constitution except when the exercise of such a power is denied by general law. La. Const. 1974 art. VI, §§ 4, 5, 7.
Id. at 243.
Further, the court found that the charter's general statement that the city shall have "[t]he right, power, privilege and authority to adopt and enforce local police, sanitary and similar regulations, and to do and perform all of the acts pertaining to its local affairs, property and government, which are necessary or proper in the legitimate exercise of its corporate powers and municipal functions" was the utmost power to initiate legislation and regulation, including the power to enact and enforce zoning and building laws.
As we are not familiar with the Jefferson Parish Home Rule Charter, we are unable to opine as to whether such powers which are at issue in this request are a part of the charter. However, if the parish determines that such powers were present prior to the 1974 constitution, then it is our opinion that the case ofCity of New Orleans clearly sets forth the home rule governments ability to retain and implement such powers, provided such powers are not inconsistent with the 1974 Constitution, or denied by general law. See for example, State ExReal. Corbello v. Bond, 441 So.2d 742 (La. 1983), where the Supreme Court held that where the constitution granted the legislature the exclusive mandate to define and suppress gambling, the legislature was prohibited from granting to the parish governing bodies the prerogative to decide what shall be in effect local gambling crimes.
If the Jefferson Parish Home Rule Charter does not provide for the general power to initiate legislation with regard to licensing and regulating day care centers, then it is our opinion that the local governing authority should review the following questions, to determine if such action would possibly withstand any legal challenge:
 1. Is the power to initiate legislation with regard to the licensing and regulation of day care centers in Jefferson Parish one that is "necessary, requisite, or proper for the management of its affairs," in accordance with LSA-Const., Art. VI, §§ 5(E), 7 (1974)?
 2. Does the enactment and enforcement of a day care license ordinance violate article VI, § 9(B) of the constitution, which provides that the police power of the state shall never be abridged?
"Although the police power is not susceptible to precise definition except on a case by case basis, it has been described generally as the inherent power of the state to govern persons and things, within constitutional limits, for the promotion of general security, health, morals and welfare. (citations omitted.)" Francis v. Morial, 455 So.2d 1168, 1172. InCity of New Orleans, supra, at 249, the court stated that "[i]t is clear that the provision (art. VI, § 9(B)) was adopted as a principle of harmonizing the replete home rule powers granted local governments with a basic residuum of the state's power to initiate legislation and regulation necessary to protect and promote the vital interests of its people as a whole." Additionally, the Court stated at 250, "A net loss in the exercise of the police power of the state would occur only when a local government's conflicting law or ordinance would prevent the state from initiating action through its legislative branch necessary to promote or protect the health, safety, welfare, or morality of the state as a whole."
While LSA-R.S. 46:1401 et seq. sets out the state policy on licensure for day care facilities, we do not find any specific statutory prohibition with regard to the licensure and regulation of day care facilities by local governing authorities. In this regard, see Bodet v. Broussard, 407 So.2d 810
(La.App. 4 Cir. 1981), wherein the Court of Appeal held that is was possible for Jefferson Parish to have its own Code of Conduct and to enforce said code, even though the constitution provided for a State Code of Ethics. The court stated that neither the constitution nor the legislation enacting the State Code of Ethics prohibited a parish from having a Code of Ethics or Code of Conduct with similar jurisdiction with the State Code.
Again, without the knowledge of the provisions of the Jefferson Parish Home Rule Charter, we do not find it prudent to specifically opine as to whether the governing authority has the power to legislate with regard to licensure and regulation of day care facilities. However, we hope that this opinion has provided some guidance in your decision with regard to this matter.
If we can be of further assistance, please do not hesitate to contact our office.
Very truly yours,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 BY: ____________________________ ANGIE ROGERS LaPLACE Assistant Attorney General
RPI/ARL:pb
Debra Miller Yenni Assistant Parish Attorney Jefferson Parish Courthouse, P.O. Box 9 Gretna, LA 70054
DATE RECEIVED:
DATE RELEASED:
ANGIE ROGERS LaPLACE ASSISTANT ATTORNEY GENERAL