Dear Mr. Drost:
Your request for an opinion as to whether provisions of the City of Sulphur Home Rule Charter were violated has been forwarded to me for research and reply. Your inquiry is two-fold. First, you ask whether or not the failure of Petitioners to file a petition [for referendum] with the Council Clerk violates the provisions of Home Rule Charter Article VI, Section 6-01. Secondly, you ask whether or not the correct procedure was followed in obtaining [the signatures of witnesses] as required by Home Rule Charter Article VI, Section 6-01.
You provided our office with the following facts: The City Council of Sulphur passed an ordinance pursuant to regular business to allow for automated speed enforcement in the City of Sulphur.[1] Thereafter, a petition initiating a referendum was requested and provided in accordance with Home Rule Charter Article VI, Section 6-01. The petition was circulated, returned and filed with the Council Clerk within the applicable time period of sixty (60) days and bearing signatures of what appeared to be the required ten (10) percent of the total registered voters of the City of Sulphur. The Council Clerk ordered a canvass of the signatures through the Office of the Registrar of Voters, and a number of signatures were disqualified. The disqualification of certain signatures resulted in the petition falling short of the percentage of signatures required by Home Rule Charter Article VI, Section 6-01 to initiate a referendum. As a result, the petition was returned to the persons filing the petition for further circulation. Within thirty (30) days, two council members brought the petition with additional signatures directly to the registrar of voters, without being first filed with the council and without any *Page 2 
council action.[2] The two council members bypassed filing the petition with the council.
You also indicated that based on information and belief, the petition was left at various establishments, such as convenience stores, restaurants, businesses, etc. for signing. Further, it is your belief that the circulator of the petition did not actually witness the signing of the petition by all signatories.
In order to respond to your inquiry, it is necessary to examine the language of the City of Sulphur Home Rule Charter and other applicable laws. Section 6-01 of the Home Rule Charter is located under Article VI, which governs initiative, referendum, recall and removal by suit and which provides in pertinent part as follows:
 Section 6-01. Initiative and Referendum
 The electors of the City shall have the power, except as herein restricted, to propose to the council passage or repeal of ordinances and to vote on the questions if the council refuses action. This power shall not extend to the proposing or repealing of ordinances making or reducing the appropriation of money, to the repeal or reduction of the levy of any taxes or to change the salaries of City government officers or employees. The initiative power shall be exercised in the following manner:
 (1) The person or persons proposing the exercise of this power shall submit the proposal to the council which shall specify within thirty (30) days a form of petition for circulation in one (1) or multiple copies as the proposer may desire. The petition shall contain the full text of the proposed ordinance.
 (2) Within sixty (60) days after the form of the petition shall have been specified, the person or persons circulating the petition shall obtain the signatures of at least ten (10) percent of the total registered voters of the City. There shall be noted after each signature on the petition the date signed and the address of the signer. Each person circulating a copy of the petition shall attach a sworn affidavit to it stating the number of signers and the fact that each signature was made in the presence of the circulator of the petition. *Page 3 
 (3) The signed petition shall be filed with the council within sixty (60) days of the specification of the form of the petition and, upon filing, the council shall order a canvass of the signatures through the office of the registrar of voters to determine their sufficiency and authenticity. The council's canvass shall be completed within thirty (30) days. If the number of signatures is insufficient or the petition is deficient as to form or compliance with this section, the council shall notify the person or persons filing the petition of such sufficiency or deficiency and allow thirty (30) days for filing of additional papers, at the end of which time the sufficiency and correctness of the petition shall be determined finally.
Notably, the Home Rule Charter for the City of Sulphur was adopted in November of 1984. This is relevant for determining the weight that the Home Rule Charter is afforded under the law.[3] La.Const. Art. VI, § 5(E) sets forth the powers and functions of a Home Rule Charter adopted after 1974 and provides that:
 (E) Structure and Organization; Powers; Functions.
 A home rule charter adopted under this Section shall provide the structure and organization, powers, and functions of the government of the local governmental subdivision, which may include the exercise of any power and performance of any function necessary, requisite, or proper for the management of its affairs, not denied by general law or inconsistent with this constitution.
The general powers of the city government are also set forth in Article I, Section 1-04 of the City of Sulphur Home Rule Charter, which states that:
 The City government shall have and is hereby granted the right and authority to exercise any power and perform any function necessary, requisite or proper for the management of its affairs, not *Page 4 
denied by the charter, or by general law, or inconsistent with the constitution.
Therefore, the City of Sulphur Home Rule Charter may provide for the exercise of any power or performance of any function necessary or proper for the management of its affairs, as long as such function is not denied by nor inconsistent with the constitution, statutes, and laws of the State of Louisiana.
Article VI, Section 6-01 of the City of Sulphur Home Rule Charter, which sets forth the procedure for initiative power of the electors, is an appropriate exercise of power by the City. Further, it is not inconsistent with the petitioning requirements set forth in the Election Code at La.R.S. 18:3.[4] Thus, it governs the issues raised in your opinion request.
As it relates to your first inquiry, Article VI, Section 6-01 allows for "thirty (30) days for filing of additional papers" with the council, in the event the number of signatures is insufficient or the petition is deficient as to form or compliance with this section. Based on the facts that you provided to our office, it appears that the additional papers were never filed with the council. Instead, the additional papers/petition containing the new signatures was brought directly to the registrar of voters. The procedural requirements set forth in Article VI, Section 6-01 of the Home Rule Charter were violated if the additional papers were never filed with the council.
As it relates to your second inquiry, to the extent that signatures for the referendum petition were obtained outside of the presence of the circulator of the petition, the signatures should not be counted towards the requirement of at least ten (10) percent of the total registered voters of the City as required by Article VI, Section 6-01.
In La. Atty. Gen. Op. 85-411, this office determined "[t]hat where persons sign petition forms out of the presence of a circulator of the petition, and mailed the petition form in, such constitutes a valid signature to the petition and should be counted to determine if the requisite number of signatures has been accomplished to require that the proposition be placed on the ballot." However, as distinguished in La. Atty. Gen. Op. 01-71, La. Atty. Gen. Op. 85-411 was based on the fact that there was no state provision in either the Constitution, Revised Statutes, or local home rule charter which provided guidelines to determine the procedural requirements which must be followed in order for signatures to a petition be deemed sufficient. *Page 5 
In this case, the City of Sulphur Home Rule Charter, clearly, provides guidelines to determine the procedural requirements which must be followed in order that signatures to a petition are deemed sufficient. To the extent that it can be proven that persons signed the petition outside the presence of the circulator of the petition, the correct procedure would not have been followed.
Moreover, there have been significant changes in the law since the issuance of La. Atty. Gen. Op. 85-411. Even if the City of Sulphur Home Rule Charter did not provide for guidelines for petitions submitted to registrars of voters, the Election Code has very specific requirements as it relates to petitions submitted to registrars of voters.
Louisiana Acts 1986, No. 669, enacted La.R.S. 18:3 which sets forth guidelines for all petitions submitted to registrars of voters. Louisiana Revised Statutes 18:3 provides in pertinent part that:
 A. Notwithstanding any other provision of law to the contrary, every petition submitted to a registrar of voters for certification shall contain the following information:
 (1) The handwritten signature of the voter who is signing the petition. . . .
 (2) The date the voter signed the petition.
 (3) The signer's ward/district/precinct and date of birth.
 (4) The address at which the signer is registered to vote, including municipal number, apartment number, rural route, and box number.
 (5) Name of the signer either typed or legibly written
 (6) Name of the person who witnessed and who obtained the signature.
 (7) Date on which the person witnessed and obtained the signature.
This office has previously examined the subject of gathering signatures for a referendum petition and found that the Election Code contemplates that all petitions subject to the requirements of La.R.S. 18:3 be personally circulated; otherwise the requirements of La.R.S. 18:3
cannot be met. See La. Atty. Gen. Op. 01-71.
Thus, in addition to being violative of Article VI, Section 6-01, if it can be proven that the petition was left at various establishments, such as convenience stores, restaurants, businesses, etc. for signing, and the circulator of the petition did not actually witness the signing of the petition by all signatories, the requirements of La.R.S. 18:3
cannot be met. *Page 6 
You have not asked our opinion about how or if the violations of the home rule charter would impact a scheduled election. In that regard, we refer you to the Election Code at La.R.S. 18:1 et seq.
We hope that this information sufficiently answers your inquiry. If we can be of further assistance, please do not hesitate to contact us.
 With Best Regards,
 JAMES D. "BUDDY" CALDWELL ATTORNEY GENERAL
 By:__________________________ Angelique Duhon Freel Assistant Attorney General
 JDC:ADF
[1] You did not ask for an opinion as it relates to the City of Sulphur's authority to pass an ordinance regarding automated speed enforcement nor did you provide our office with a copy of the ordinance for our consideration. This opinion only addresses the issues concerning whether or not there was compliance with the referendum procedures established by the Home Rule Charter.
[2] Not less than a majority of the membership of the council shall constitute a quorum to transact business. See City of Sulphur Home Rule Charter Article II, Section 2-07(G).
[3] Article VI of the 1974 Louisiana Constitution strikes a different balance of power between the state legislature and home rule governments than that which existed under previous constitutions. Home rule entities must be regarded as more than creatures of the legislature, since their powers and functions are granted directly by the constitution and their discretion of deployment is constitutionally preserved against undue interference. Francis v. Morial, 455 So.2d 1168 (La. 1984) (citing Kean, Local Government and Home Rule, 21 Loy. L.Rev. 63, 66 (1975) and Murchison, Developments in the Law, 1979-1980, Local Government Law, 41 La. L.Rev. 483, 487-88(1981)).
[4] The Louisiana Election Code at La.R.S. 18:1(B) expressly affirms the police power of the state to preempt any concurrent or contrary local regulation of election practices. Thus, the Election Code supersedes home rule charters. See La. Atty. Gen. Op. 90-46.