612 So.2d 318 (1993)
CITY OF NEW ORLEANS, Through its DEPARTMENT of SAFETY and PERMITS and the City Planning Commission
v.
BOARD OF COMMISSIONERS of the ORLEANS LEVEE DISTRICT.
No. 92-CA-0148.
Court of Appeal of Louisiana, Fourth Circuit.
January 14, 1993.
Rehearing Denied February 12, 1993.
*319 Richard J. McGinity, Gen. Counsel, Bd. of Com'rs of the Orleans Levee Dist., New Orleans, for appellee.
N. Eleanor Graham, Deputy City Atty., Brett Prendergast, Chief of Civil Litigation, Kathy Torregano, Chief Deputy City Atty., William D. Aaron, Jr., City Atty., New Orleans, for appellant.
BARRY, WARD and JONES, JJ.
JONES, Judge.
The City of New Orleans appeals a decision of the trial court maintaining the Board of Commissioners of the Orleans Levee District's exception of no cause of action and dismissing the City's petition for declaratory judgment and injunctive relief against the Levee Board. We affirm the decision of the trial court.

FACTS
The City of New Orleans, through its Department of Safety and Permits and the City Planning Commission commenced this action for declaratory judgment and injunctive relief in the Civil District Court for the Parish of Orleans.
The City alleged that the defendant was in the process of developing a marina known as the South Shore Harbor Marina (hereinafter, South Shore Harbor) which is located on property within Orleans Parish. The defendant owns, by grant from the State, all lands on which the marina is being developed. This land is zoned "Park and Recreation District" pursuant to various provisions of the City's Comprehensive Zoning Ordinance. The ordinance contains provisions which the City argues mandates city approval for marinas and developments like South Shore Harbor as a conditional use in areas zoned as a "Park and Recreation District."
The defendant initially submitted plans for the South Shore Harbor development to the City. However, in February 1984, the defendant commenced construction of the marina without having sought approval for it to operate as a conditional use from the City Planning Commission. In March 1986, construction commenced on 26 covered boat slips at South Shore Harbor without defendant or any of its contractors applying for building permits for said construction. After construction started, one of the contractors applied for and received a building permit and a use and occupancy certificate for the boat slips. The certificate was issued upon the promises by a representative of the defendant to seek a conditional use from the City Planning Commission for South Shore Harbor. On May 21, 1986, the defendant Levee Board allegedly adopted a resolution authorizing its president or managing director to execute a conditional use application with the City Planning Commission. A building permit was issued on August 18, 1987 for the installation of fuel tanks and pumps to service South Shore Harbor.
In April or May, 1988 the City learned that the defendant had instructed one or *320 more of its contractors not to obtain City permits or inspection for South Shore Harbor. In June 1988, the former president of defendant's board notified the City that it challenged the City's jurisdiction and police power to enforce its land use and zoning laws and other laws relative to construction on defendant's property and South Shore Harbor in particular.
In May, 1990 the city's inspector from the Department of Safety and Permits attempted to inspect certain premises at South Shore Harbor as part of an investigation into an application for a City alcohol and beverage permit. However, the defendant's police ordered the city inspector to leave the defendant's property.
The City subsequently initiated this litigation seeking a judgment and order declaring 1) that defendant's construction and development of South Shore Harbor Marina is illegal and violates the City's Comprehensive Zoning Ordinance and other City building and safety codes and ordinances; 2) that by proceeding with such development, the Levee Board is usurping the City's Home Rule Charter authority to enforce its police power within its jurisdictional limits; and 3) that the defendant is required to comply with the Comprehensive Zoning Ordinance for the City of New Orleans as well as with other City building and safety codes and ordinances that pertain to the planning, development, construction, expansion, and/or building on defendant's properties that are or will be used for profit-making, proprietary, permissive, or non-governmental activities. The City sought a preliminary and permanent injunction enjoining the defendants from continuing with any on-going construction and from commencing any new construction at the marina.
The Board of Commissioners of the Orleans Levee District excepted to the City's petition on the ground that the zoning ordinances of the City do not apply to governmental functions and institutions of the State of Louisiana. In response to this argument, the City of New Orleans argued that pursuant to Article II, section 2-101 of the City's Home Rule Charter, the City is invested with the authority to adopt and enforce local police and similar regulations necessary or proper for the legitimate exercise of its corporate powers and municipal function. Further, the City argued that since the Levee Board was nothing more than a "mere legislative creation", it could not ignore the police power of the City to regulate land use and zoning within its territory.
The City also argued that the defendant is engaged in profit-making, permissive and non-governmental activities that require it to submit to the police power and jurisdiction of the City of New Orleans, and to comply with all City land use and zoning laws, the City's Building Code, other safety codes, and all other pertinent laws relative to construction and development at South Shore Harbor.
The trial court sustained the defendant's peremptory exception of no cause of action and dismissed the City's action.

DISCUSSION AND LAW
The first issue to be decided by this court is whether the provisions of the City's Home Rule Charter empower the City to require the defendants to comply with the City's zoning regulations in the construction and development of the marina.
The issue of state ownership of the marina is not seriously disputed by any of the parties. The marina is located on property within the territorial limits of the Lake Pontchartrain Development Project. The state formerly held all rights to the bed and shores of Lake Pontchartrain. Pursuant to the provisions of La.R.S. 38:307 and 336, formerly Art. 16 § 7 La. Const. of 1921 all rights formerly held by the state to this property have now been vested in the Levee Board. By virtue of the state land grants and various constitutional provisions, the Board had been imbued with jurisdiction and power to develop property within this area.
The City maintains that this delegation of authority to the Levee Board to develop the property is subject to the City's zoning power because the City's status as a Home Rule Charter government pursuant to the *321 provisions of Article VI of the Louisiana Constitution of 1974 gives the City powers that are superior to the powers of the Levee Board. However, the Levee Board contends that it is a state agency performing a state function. As such, it is merely the alter ego of the State. Thus, the City cannot utilize its authorities under its Home Rule Charter to interfere with or regulate the development of the South Shore Marina by the Levee Board.
The City relies upon Francis v. Morial, 455 So.2d 1168, 1171 (La.1984) for the proposition that "... a home rule charter government possesses, in affairs of local concern, powers which within its jurisdiction are as broad as that of the State, except when limited by the constitution, laws permitted by the constitution, or its own home rule charter". As a governmental entity operating under a home rule charter, it is true that the City possesses superior powers in "affairs of local concern."
Nevertheless, the City's reliance on Francis v. Morial, supra, is misplaced. That case involved an attempt by the Legislature to alter the procedure for selecting members of the aviation board. The court was faced with a situation where the City owned and operated an airport located in another city. The City's Home rule charter specifically established an aviation board consisting of five members to be appointed by the Mayor with the approval of the City Council. The legislature passed an act purporting to expand the board and to require that two members of the board must either reside or have businesses in two parishes outside of New Orleans. The court correctly invalidated the legislation as an unwarranted interference in the internal affairs of the City. In doing so the court primarily relied upon the provisions of Article VI, Section 6 of the Louisiana Constitution of 1974 which specifically prohibits the Legislature from enacting laws which change or affect the structure and organization or distribution of powers of a local governmental subdivision operating under a home rule charter.
This case differs from Francis v. Morial, supra, in that the laws giving the Levee Board authority to develop property within the Lake Ponchatrain Development area do not alter or materially affect any powers of the City to regulate its local affairs. These laws simply designate the Levee Board as the agency to administer the property upon which the marina is being constructed. The property in question, unlike the property in Francis v. Morial, supra, is not owned or operated by the city. On the contrary, this property was formerly owned directly by the state and has always been regulated by the state. Thus, the development of this property, unlike the management of the city-owned airport, is not a matter that can be considered a purely local affair of the City of New Orleans. Rather, the development of the marina is basically a matter of legitimate state concern.
As a home rule charter municipality, the City of New Orleans possesses superior police powers to those of the levee board. Board of Commissioners v. Dept. of Natural Resources, 496 So.2d 281 (La. 1986). However, those superior police powers only extend to local matters. They do not extend to areas wherein the power being exercised is that of the State. City of New Orleans v. State, 364 So.2d 1020 (La. 1978). In those areas, the State has superior police powers to the City. Art. 6 § 9(B), La. Const. of 1974. Thus, the next issue to be addressed by this court in determining whether the municipal zoning laws are applicable is whether the actions of the defendant Levee Board in developing and constructing South Shore Harbor is equivalent to the action of the State.
A levee board is a creature or agency of the state brought into existence for the purpose of discharging the state's duties of flood protection. Accordingly, as between the state and its agency, property is placed under the control of the agency for supervision and administration. However, the land to all practical intents and purposes is still the property of the state. Board of Commissioners of the Orleans *322 Levee District v. Department of Natural Resources, 496 So.2d 281, 288 (La.1986).
In cases such as this where the project is being funded by the State and where the resultant buildings are state owned, the Levee Board acts as the alter ego of the State. As such it assumes the superior police powers of the State. Since the Levee Board is merely acting as the State in developing and constructing the marina, it is exempt from local zoning regulations under the rationale given by the court in City of New Orleans v. State, supra.
In reaching this conclusion, we note that the language of La.R.S. 38:307 gives the Levee Board jurisdiction to construct a marina on the property in question. La.R.S. 38:307 provides:
C. (1) In the planning, designing, and executing of a project, the board shall have jurisdiction, power, and authority, within the territorial limits of the project, to dedicate to public use and to lay out, construct, embellish, and maintain a system of parks, beaches, tracts of lands, and streets, with the necessary and related or unrelated buildings and the usual adjuncts to the kind of development contemplated hereunder and to construct and equip and maintain playgrounds, places of amusement and entertainment, golf links, gymnasiums, swimming pools, bathing beaches, aviation fields, and other like places.
(2) The board of commissioners of the Orleans Levee District may establish rental rates or other types of docking charges for boat slips in any marina it owns or operates....
The City's argument that the language in La.R.S. 38:307 H mandates a finding that the Levee Board must seek approval from the City to develop this area as a marina is not well-founded. La.R.S. 38:307 H merely provides that:
Nothing herein contained shall be construed to deprive the city of New Orleans of any rights or powers that it presently has or exerts within its municipal limits or to confer further police power upon the board of commissioners of the Orleans Levee District.
Pursuant to this section, the City retained all of the police powers that it had when this statute was enacted. However, this provision does not bestow upon the City police powers superior to those of the State. Rather, the City's police powers are applicable only in matters of local concerns. In matters of State concern, the state agency entrusted by the Legislature with the authority to act for the State possesses the police power of the State when acting to accomplish its State function.
The extent to which municipal zoning laws can be enforced against the State was addressed by our Supreme Court in City of New Orleans v. State, supra. In that case the City sought to enforce its zoning ordinances by seeking to enjoin the State of Louisiana from using Jackson Barracks as a prison for the housing and/or treatment of convicted criminals and from transferring convicted felons under the control of the Department of Corrections to the state-owned facility located at Jackson Barracks in the City of New Orleans. The Supreme Court sustained the State's exception of no cause of action and dismissed the City's action to enforce its zoning ordinances against the State. In doing so, the Court stated:
... The municipal police power is subordinate to that retained by the State as sovereign. Hence municipal zoning ordinances cannot control the state's use of its property in performing a governmental function.
City, supra at 1023.
Pursuant to the above cited case, the municipal zoning ordinances cannot control the state's use of its property when it is performing a governmental function.
The City does not seriously contest the fact that by enacting La.R.S. 38:307 the Legislature has granted the authority to develop a marina to the Levee Board. However, the City argues that the grant of authority to develop the property does not contain any exemption from compliance with the City's zoning and building laws because the property is being developed for "proprietary, permissive and non-governmental *323 activities." The issue of whether the construction and development of the marina is a governmental function was addressed by this court in Board of Com'rs, Etc. v. All Taxpayers, Etc., 396 So.2d 502 (La.App. 4th Cir.1981), writ den., 400 So.2d 667 (La.1981). This court specifically recognized the authority of the Board to construct and operate a marina as one of its secondary functions.
The City has not cited any persuasive authority to justify the distinction which it urges this court to make between a mandated governmental function and a permissive governmental function. A governmental function is a governmental function. The fact that the grant of the authority to the Levee Board to construct a marina is permissive does not negate a finding that a governmental function is being performed. For this reason we reaffirm our earlier conclusion that the marina is properly considered a governmental project.
The City's reliance upon Orleans Parish School Board v. City of New Orleans, 468 So.2d 709 (La.App. 4th Cir.1985), writ den., 472 So.2d 593 (La.1985) and Apex Oil Co. v. City of Port Allen, 357 So.2d 624, (La.App. 1st Cir.1978), writ den., 358 So.2d 632 (La. 1978) to support its position that the Levee Board must yield to the City's superior police powers is misplaced.
In Orleans Parish School Board v. City of New Orleans, id. this court upheld the constitutionality of a City zoning ordinance which changed the zoning requirements for school buildings from a permitted use to a permitted conditional use in residential areas. As a result of the change, the School Board was required to seek approval from the City Council when it desired to locate a school in a residential area. In rejecting the school board's argument that the ordinance was unconstitutional because it conflicted with the provisions of La.R.S. 17:81 which gave the parish school board the authority to determine the location of schoolhouses, the court found that the legislative grant of the power to locate school buildings was not an unfettered right. Rather the right was to be exercised in a reasonable manner. The ordinance passed by the City, according to the Court, did not interfere with the Board's ability to select the location of its school houses. Rather, it merely helped to insure that the School Board made its decision in a reasonable manner. Further, the court noted that although the State had given the School Board the power to decide where it would like to locate its school houses, there had been no recall by the legislature of the powers that had been granted to the City to zone. The court decided that it was not necessary for it to address the issue of whether the school board had any police powers. Thus, the Court refrained from addressing the issue of whether the ordinance conflicted with specific police powers which had been delegated to the school board. In doing so, the court noted that the status of parochial school boards had not been determined with any degree of consistency.[1]
Unlike the School Board, the status of the Levee Board as a creature of the state has been long established. Additionally, the statutes and constitutional provisions relied upon by the Board specifically vest the Levee Board with authority to take whatever action is necessary to develop the Lakefront area pursuant to its constitutional and legislative mandate. More importantly, however, the marina is located on state owned property, whereas the areas wherein the school board sought to place its schools were residential areas. For these reasons, the rationale given by the court to uphold the zoning ordinance in Orleans Parish School Board v. City Of New Orleans, supra, is not applicable in this case.
Similarly Apex Oil, supra, wherein the court upheld the right of the City of Port Allen to enforce its building restrictions within the jurisdictions of the Baton Rouge Port Commission is also distinguishable from this case. In Apex Oil, supra, the *324 court found that the Port Commission had not been granted any police powers. Nor did the Port Commission cite any authority to persuade the court that the state had altered or recalled the power of the City to regulate building within its jurisdiction. The court concluded that prior to the formation of the port commission, the City of Port Allen possessed the power to adopt building restrictions and require building permits pursuant to the provisions of its charter and the state general law. The court also concluded that the state had the authority to alter or recall this delegated power. Finding nothing in the Constitution or the statutes to convince them that the people or the legislature intended to recall the police powers of the City of Port Allen as they applied to the Port's property, the court upheld the trial court's denial of an injunction to prohibit the City from enforcing the provisions of its building Code.
The marina is a state owned facility which is simply being managed by the Levee Board for the benefit of the state. By enacting La.R.S. 38:307 and 336 the state has delegated the authority to construct and/or develop this property to the Levee Board. When acting pursuant to this mandate, the Levee Board possesses the police powers of the State. The City of New Orleans has no authority to require the Levee Board to comply with its zoning laws since the State has implicitly recalled any zoning authority that the City conceivably had in this matter.
The next issue to be addressed by this court is whether the defendants must obtain building permits pursuant to the City's Building Code. This issue is governed by the provisions of La.R.S. 40:1721 et seq. (the Louisiana Building Code for State Owned Buildings). All state owned buildings are governed by these provisions. Since the marina is a state owned facility the provisions of this act would apply.
The following language in La.R.S. 40:1721 indicates that the local authorities have no authority over state owned buildings:
... The provisions of this Part should not be construed to supercede any local building codes or standards except as they apply to state owned buildings (emphasis added).
Additionally, La.R.S. 40:1724 specifically states that
A. The building permit will be issued to the building contractor by the parish or the municipality when the plans and specifications have been approved by the state fire marshal, the secretary of the Department of Health and Human Resources, and the facilities planning and control department and the permit fee has been paid in full by the contractor to the parish or municipality.
B. The occupancy permit will be issued to the using agency when the building construction has been approved by the state fire marshal, secretary of the Department of Health and Human Resources and the facilities planning and control department.
Pursuant to the above provisions it is clear that any building permit needed for this project must be obtained from the city pursuant to state law, and it is not necessary for the Levee Board to obtain building permits mandated by the City's Building Code.
An exception of no cause of action must be overruled unless the allegations of the petition exclude every reasonable hypothesis other than the premise upon which the defense is based, that is, unless the plaintiff has no cause of action under any evidence admissible under the pleading. La.C.C.P. art. 927. Darville v. Texaco, Inc., 447 So.2d 473 (La.1984).
Because we find that the City's petition contains no allegations of fact which would allow us to find that a cause of action has been stated against the Levee Board, we affirm the decision of the trial court dismissing the City's action.
AFFIRMED.
NOTES
[1] Subsequently, the Supreme Court, in La. Associated Gen. Contr. v. Calcasieu Parish School Board, 586 So.2d 1354, 1367 (La.1991) concluded that a parish school board is a quasi-municipal corporation which is governed by rules applicable to municipalities.