648 So.2d 1310 (1995)
ST. CHARLES GAMING COMPANY, INC.
v.
The RIVERBOAT GAMING COMMISSION, et al.
No. 94-WA-2697.
Supreme Court of Louisiana.
January 17, 1995.
*1312 Michael H. Rubin, Paul S. West, McGlinchey, Stafford & Lang, Robert M. Grodner, Timothy H. Scott, Randell O. Lewis, for applicant.
Salvador Anzelmo, Thomas W. Millner, Thomas P. Anzelmo, Graymond F. Martin, Ira J. Rosenzwieg, Robert L. Raymond, Smith, Martin, Schneider, Shields & Moot, Anna-Kathryn Williams, Joseph P. Brantley, IV, Beychok, Freeman & Brantley, Richard P. Ieyoub, Atty. Gen., Thomas A. Warner, III, Sean A. Jackson, Claudeidra Minor, Jenifer Schaye, John M. Landis, Phillip A. Wittmann, Marc D. Winsberg, Stone, Pigman, Walther, Wittmann & Hutchinson, for respondent.
Thomas W. Tucker, Lisa C. West, for amicus curiae.
PER CURIAM.[*]
The question presented is whether a St. Charles Parish zoning ordinance, which restricts riverboat gaming activity within the parish to locations on batture to be specifically designated by subsequent ordinances, is invalid because it violates the state constitution and laws. The State Riverboat Gaming Commission authorized a riverboat gaming company to berth its vessel and conduct riverboat gaming operations at a specific site on the batture. The parish council passed a proposed ordinance rezoning the gaming company's site to permit gaming activities in accordance with the zoning ordinance, but the parish president prevented the measure from becoming law by his veto, and the council failed to override the veto. The gaming company brought suit to enjoin the parish from enforcing its zoning ordinance so as to halt or interfere with the company's construction of berthing facilities at the site. The trial court granted a preliminary injunction to this effect, holding that the zoning ordinance violates both state constitutional and statutory provisions and that, consequently, the gaming company is entitled to injunctive relief without showing irreparable injury.
The parish president appealed to this court, which has jurisdiction because this is a case in which an ordinance has been declared unconstitutional. La. Const.1974, Art. V., § 5(D). We reverse and remand the case to the trial court for further proceedings. The parish zoning ordinance is not unconstitutional or unlawful for the reasons relied upon by the trial court. Article XII, § 6(B) of the state constitution, which mandates the legislature to define and suppress gambling, does not prevent a local government from exercising *1313 its constitutionally delegated home rule powers to adopt and enforce lawful and nonarbitrary zoning ordinances to restrict riverboat gaming activity to reasonably designated zones and locations. The Riverboat Economic Development and Gaming Control Act, La.Rev.Stat.Ann. § 4:501, et seq. (West Supp.1994), does not deny any home rule government the power to enact and enforce constitutional and nonarbitrary zoning ordinances.
The case is remanded to the trial court for its adjudication of the issues not reached, including whether the gaming company can prove all the requisites for injunctive relief, such as irreparable injury; and whether the gaming company is entitled to any relief because the parish acted arbitrarily or unreasonably in failing to perfect an ordinance approving the company's site as a designated location for riverboat gaming activity.

I.
In 1991, the legislature enacted the Louisiana Riverboat Economic Development and Gaming Control Act, La.Rev.Stat.Ann. § 4:501 et seq. (West Supp.1994) (the Riverboat Gaming Act), which authorizes the establishment of a limited number of riverboat gaming projects in the state under the auspices of the Department of Public Safety and Corrections. In June 1993, the Louisiana Riverboat Gaming Commission (the Gaming Commission), pursuant to its statutory authority, awarded the St. Charles Gaming Company, Inc. (SCGC) a Certificate of Preliminary Approval to berth and conduct gaming operations at a site located on the west bank of the Mississippi River in St. Charles Parish. On March 29, 1994, SCGC received a license to conduct such gaming operations from the Louisiana Riverboat Gaming Enforcement Division. On or about May 21, 1994, the Gaming Commission approved SCGC's application for a site change to a 23-acre property located on the east bank of the Mississippi at St. Rose in St. Charles Parish. The Gaming Commission subsequently approved an addition of 9 acres to this site. The entire proposed docking site is located on batture property in St. Charles Parish.
St. Charles Parish enacted the ordinance at issue, Ordinance 93-10-9 (the zoning ordinance), on October 18, 1993, purportedly to regulate land use in light of the enactment of the Riverboat Gaming Act. The Ordinance limits the location of docking and related facilities for riverboat casinos to a newly created zoning category, G-1, and restricts G-1 zoning to batture property in the Parish.[1]
This suit for injunctive relief was brought by SCGC when the Parish failed to grant its request to rezone to G-1 the docking site *1314 located in St. Rose in order for SCGC to proceed with its plans to develop the site for berthing its riverboat casino.[2] Following a two-day hearing, the trial court granted SCGC a preliminary injunction enjoining the Parish of St. Charles and its governing authority, officers, agents and employees, "from interfering with, prohibiting or restricting the location, operation or development, within the Parish of St. Charles, of the St. Charles Gaming Company, Inc. riverboat and gaming operations conducted thereon, at the site along the Mississippi River duly approved by the Louisiana Gaming Commission."
In its Written Reasons for Judgment, the trial court granted the injunction without a showing of irreparable harm based on its finding that (1) the Ordinance is unconstitutional on its face, because it purports to regulate "gambling" in violation of La. Const. art. 12, § 6(B) and La.Rev.Stat.Ann. § 14:90 (West Supp.1994); and (2) "by omission" the Ordinance directly contradicts prohibitory law, because the Riverboat Gaming Act authorizes riverboat gaming on Lake Pontchartrain, see La.Rev.Stat.Ann. § 4:503(B) (West Supp.1994), yet the Ordinance, in limiting G-1 zoning to batture property in the Parish, does not permit the berthing of riverboat casinos along the lake inasmuch as there is no batture property in the St. Charles Parish portion of the lakeshore. The trial court also observed, in a footnote located in the portion of the Written Reasons discussing its findings of fact, that the Parish's application of the zoning ordinance, by allowing the Parish to prohibit gaming through its ability to withhold G-1 zoning, violated the Riverboat Gaming Act, specifically La.Rev.Stat.Ann. § 4:552(B) (West Supp.1994), which provides that "[o]ther than to levy the admission fee authorized by Subsection A of this Section, no local governing authority may license or regulate the operation of riverboats and the gaming operations conducted thereon."
Appellant, Chris Tregre, as St. Charles Parish President, unsuccessfully sought leave to file a suspensive appeal from the trial court's grant of injunctive relief and came before this Court seeking an emergency stay of the injunction pending appeal, as well as a writ of mandamus. We noted probable jurisdiction to review the trial court's determination that the Parish's zoning ordinance is unconstitutional. St. Charles Gaming Company, Inc. v. The River Boat Gaming Commission, 94-2697 (La. 11/10/94), 645 So.2d 208. We now reverse.

II.
A preliminary injunction may not issue against a municipal body without a showing of irreparable harm unless the action sought to be enjoined directly violates the constitution or prohibitory law. See, e.g., City of New Orleans v. Board of Commissioners, 93-0690, p. 30 (La. 7/5/94), 640 So.2d 237, 253; Louisiana Associated General Contractors v. Calcasieu Parish, 586 So.2d 1354 (La.1991); Plaquemines Parish Commission Council v. Perez, 379 So.2d 1373 (La.1980); New Orleans Public Service Inc. v. Council of the City of New Orleans, 539 So.2d 891 (La.App. 4 Cir.1989). As one of its stated reasons for granting injunctive relief without first requiring proof of irreparable harm, the trial court found that the zoning ordinance unconstitutionally attempted to regulate gambling in violation of La. Const. art. 12, § 6(B)[3] and that it directly violated the legislature's prohibition of gambling, see La.Rev.Stat.Ann. § 14:90 (West Supp. *1315 1994),[4] because the ordinance was intended "to create a specific Zoning District in St. Charles Parish to allow for Riverboat Gambling." The trial court's rationale proceeds as follows: (1) The state constitution mandates that the legislature define gambling and suppress it. (2) Therefore, only the legislature has power to pass such laws. (3) The legislature has defined gambling by naming and defining riverboat "gaming" as legal activity conducted under state licensing and supervision on gaming boats. (4) Therefore, the St. Charles Parish ordinance is unconstitutional because it attempts to define or suppress "gambling."
The trial court's rationale is based on an incorrect interpretation of the ordinance. The zoning ordinance does not attempt to define or suppress activity that is defined and suppressed as "gambling" by the legislature. When the ordinance is read as a whole and in context, it is clear that it purports only to regulate the use of land in connection with state authorized riverboat "gaming" by designating a specific zoning district for riverboat gaming. The preamble of the ordinance explicitly indicates that the ordinance was enacted in response to the Riverboat Gaming Act and the advent of legalized riverboat gaming in the state. The ordinance does not purport to regulate the activity of gaming itself. The local law is designed merely to designate an area in which such legal activity may be conducted and to limit legal gaming to that district. The ordinance's inadvertent use of the term "riverboat gambling," instead of "riverboat gaming," does not indicate a different intention. The legislative intent of the ordinance clearly is to confine legal riverboat gaming, and not illegal gambling, to a specific district within the parish. To attribute any other meaning to the zoning ordinance would lead to absurd consequences.
The trial court additionally granted the injunction based on its finding that the zoning ordinance is in direct violation of a prohibitory law because "by omission, the G-1 Ordinance purports to prohibit the berthing of a riverboat casino on Lake Pontchartrain within the Parish," in "direct[] contradict[ion to] the Riverboat Gaming Act, which authorizes the operation of riverboats on Lake Pontchartrain." The trial court erred in making this determination because the issue was not ripe for adjudication.
It is well settled that courts will not decide abstract, hypothetical or moot controversies, or render advisory opinions with respect to such controversies. St. Charles Parish School Board v. GAF Corp., 512 So.2d 1165, 1170-71 (La.1987), and cases cited therein. In order to avoid deciding abstract, hypothetical or moot questions, courts require that cases submitted for adjudication be justiciable, ripe for decision, and not brought prematurely. Id. at 1171, and cases cited therein. A "justiciable controversy" is one presenting an existing actual and substantial dispute involving the legal relations of the parties who have real adverse interest and upon which the judgment of the court may effectively operate through a decree of conclusive character. Id. A "justiciable controversy" is thus distinguished from one that is hypothetical or abstract, academic or moot. Id.
Although there is an actual and substantial dispute between the parties regarding the operation of SCGC's riverboat from the proposed docking site along the Mississippi River at St. Rose, there is nothing in the record to suggest that SCGC has sought approval or been authorized to conduct riverboat gaming operations at any location along Lake Pontchartrain in the Parish of St. Charles. Consequently, the lakefront question arising from the controversy between the parties in the present case is not justiciable, not ripe for decision and is raised prematurely. The trial court thus erred in deciding this issue as a basis for its grant of injunctive relief to SCGC.
*1316 The above issues constitute the express reasons for the trial court's grant of the injunction in favor of SCGC. In a footnote located within its discussion of its findings of fact, however, the court also observed that the zoning ordinance improperly regulates riverboat gaming in violation of La.Rev. Stat.Ann. § 4:552(B) (West Supp.1994), remarking as follows:
At the hearing on the preliminary injunction, St. Charles Gaming Corporation, Parish President Chris Tregre, and the Parish of St. Charles stipulated that "that [sic] there is not now, nor has there ever been any land located in St. Charles Parish that has been designated for G-1 zoning."
Having received authority from the Riverboat Gaming Commission to dock in St. Charles Parish; having been permitted by the Zoning Ordinance of 1981 to dock in the B-1 and B-2 districts; yet, having been disqualified from docking on the batture property on account of the enactment and the Parish's interpretation of Ordinance No. 93-10-9, SCGC was prohibited from conducting gaming operations.
By prohibiting gaming on riverboats through its ability to withhold the G-1 zoning designation, St. Charles Parish attempted to control the gaming aspect of a licensed riverboat casino. In so doing, St. Charles Parish violated the Riverboat Gaming Act, specifically La.R.S. 4:552(B), which provides that, "[o]ther than to levy the admission fee authorized by Subsection A of this Section, no local governing authority may license or regulate the operation of riverboats and the gaming operations conducted thereon."
If the trial court meant by this statement that a local government is precluded by operation of the Riverboat Gaming Act from enacting valid zoning and land use regulations in connection with gaming activities, the trial court was in error.
Zoning is a legislative function, the authority for which flows from the police powers of governmental bodies. City of New Orleans v. Board of Commissioners, 93-0690, p. 11 (La. 7/5/94), 640 So.2d 237, 245; Palermo Land Co. v. Planning Commission of Calcasieu Parish, 561 So.2d 482, 491 (La. 1990); Morton v. Jefferson Parish Council, 419 So.2d 431, 434 (La.1982); Folsom Road Civic Association v. Parish of St. Tammany, 407 So.2d 1219, 1222 (La.1981); Four States Realty Co., Inc. v. City of Baton Rouge, 309 So.2d 659, 672 (La.1974). Article VI, § 17 of the 1974 Louisiana Constitution expressly grants to all local governments the power to enact zoning regulations.[5] La. Const. art. VI, § 17; see also Morton, supra, at 433 n. 3. This specific grant of home rule authority must be interpreted broadly to preserve it from undue encroachment by the state. See Francis v. Morial, 455 So.2d 1168, 1173 (La. 1984). Home rule powers, functions and immunities are to be construed fairly, genuinely and reasonably, and any claimed exceptions to them should be given careful scrutiny by the courts. Id.; City of New Orleans, supra, at p. 27, 640 So.2d at 252.
The Parish of St. Charles is a post-1974 home rule charter government that adopted its home rule charter pursuant to the terms of the 1974 Louisiana Constitution, art. VI, § 5. In a recent pronouncement of the constitutional balance between state and local governmental powers, we observed that the 1974 Louisiana Constitution grants to post-1974 home rule charter governments immunity from state legislative control when exercising within their boundaries legislative powers consistent with the 1974 state constitution that are not denied by general law. See City of New Orleans, supra, pp. 4-19; 640 So.2d at 243; La. Const. art. VI, § 5. Thus, a valid ordinance of a post-1974 home rule charter government is constitutionally protected against reversal by the legislature "except by general state laws that deny, *1317 rather than merely conflict with," the local law. Id. at 19, 640 So.2d at 248 (emphasis added).
The trial court's observation that the zoning ordinance attempts to control the gaming aspect of a licensed riverboat casino in violation of the Riverboat Gaming Act's prohibition against local government licensing or regulating of riverboat gaming operations presumably reflects its belief that the Riverboat Gaming Act constitutes a general state law that denies to local government the power to regulate zoning and land use. Such a determination reads the provisions of the Riverboat Gaming Act too broadly in derogation of local government powers and misconstrues our decision in City of New Orleans, supra.
Section 552(B) of the Riverboat Gaming Act prohibits local governments from "licens[ing] or regulat[ing] the operation of riverboats and the gaming operations conducted thereon," other than to levy fees permitted under the Act. La.Rev.Stat.Ann. § 4:552(B) (West Supp.1994). Nothing in this language expressly or implicitly denies to local governments the authority to exercise zoning powers to promote the public health, safety, morals and general welfare of their communities. In Polk v. Edwards, 626 So.2d 1128, 1144 (La.1993), we found that comparable language in a provision restricting the power of local government to regulate the "operation" of the land-based casino authorized pursuant to the Louisiana Economic Development and Gaming Corp. Act, 1992 Acts 384, La.Rev. Stat.Ann. §§ 4:601-686 (West Supp.1994),[6] did not infringe the City of New Orleans' zoning and land use powers. We observed that "[t]he statute's focus is not on land use, zoning, or historic preservation, but on licensing, taxing, and fee imposition on the internal affairs of the corporation." Id. at 1144. Similarly, the provision here is focussed on licensing, fees and the internal affairs of the riverboat casino operations. Consequently, this section of the Riverboat Gaming Act does not deny to local governments the authority to enact valid land use and zoning regulations relative to riverboat casino activities.
Moreover, nothing in the scheme or purpose of the Riverboat Gaming Act as a whole suggests that a local government's power to zone and regulate land use has been denied by the state. In our opinion, the Riverboat Gaming Act does not purport to prevent localities from confining legal gaming activities to reasonable and fair zones in accord with the surrounding uses of property and comprehensive zoning ordinances to promote the public health, safety, morality and welfare of the community. The purpose of the Act is to authorize, license and control legalized gaming activities in riverboats on designated waterways in order to stimulate and promote growth of the state's economy. The Act specifically provides that riverboat gaming shall be "regulated, licensed, and controlled in such a manner as to accomplish and promote [the Act's] policies in such a manner as to protect the public health, safety, morals, good order, and general welfare of our citizens." La.Rev.Stat.Ann. § 4:502(A)(4). As reflected by the constitutional grant of land use and zoning power to local government, this purpose can generally best be accomplished with respect to land use and zoning by permitting regulation at the local level. La. Const. art. VI, § 17; see also Note, Municipal Antitrust Immunity After City of Columbia v. Omni Outdoor Advertising, Inc., 67 Wash.L.Rev. 479, 485 (1992) ("In most instances of local concern such as zoning ... the local government is in the best position to regulate in accordance with the unique needs of the community."); Luery v. Zoning Board of the City of Stamford, 187 A.2d 247, 252 (Conn.1962) ("In the final analysis, zoning is primarily a matter of local concern. The local authorities are conversant with the needs of the community as a whole. They are in the best position to plan the orderly growth and expansion of the community for the general welfare."). We see nothing in the Riverboat Gaming Act that indicates a legislative intent to remove this power from local government. The Act *1318 does not authorize the Gaming Commission, or any other state agency, to zone or designate, as opposed to approve, the specific locations for such activities within a parish or community or to deprive localities of the power to create reasonable and fair zones for such activities consistent with both the economic goals of the statute, the public health, safety, morals, good order and general welfare goals of the statute, and the parish's exercise of land use and zoning authority. The St. Charles Parish zoning ordinance consequently may not be invalidated on the grounds that the parish exceeded its authority in enacting zoning regulations with respect to riverboat gaming activities.[7]

III.
SCGC is not without a remedy, however, in the event that it proves that the parish government has acted arbitrarily in rezoning or denying rezoning for purposes of gaming. The method of zoning pursued by the locality here is sometimes called "two-step," or "floating" zoning, under which one ordinance creates a new use classification without boundaries, and a second ordinance places designated territories in that classification. See 8 McQuillan § 26.65, p. 222, and authorities cited therein. Therefore, if the parish acts unreasonably, arbitrarily or discriminatorily in refusing to place designated territory in the legal gaming classification, aggrieved parties are entitled to seek judicial review and relief. Questions that should be considered when the locality rezones or denies rezoning for this purpose include whether the local government's action was arbitrary, unreasonable or discriminatory in terms of the prevailing uses of property and whether the action was in accord with a comprehensive plan. See 8 McQuillan, § 25.65, p. 222, and authorities cited therein.
Because the trial court did not reach the issue of whether the parish government validly exercised its zoning power in denying the gaming company's request to place a designated territory including its property in the G-1 or legal gaming classification, we reserve this issue and all other issues not reached by the trial court or determined by our opinion for resolution when this case is remanded to the trial court. On remand, SCGC is free to seek relief on the grounds that the Parish of St. Charles has violated well-settled principles governing the exercise of the police power, see, e.g., Francis v. Morial, 455 So.2d 1168 (La.1984); or has exercised its zoning power in an unreasonable, oppressive, arbitrary, or discriminatory manner. See, e.g., Four States Realty Co. Inc. v. City of Baton Rouge, 309 So.2d 659 (La. 1975); Plebst v. Barnwell Drilling Co., Inc., 243 La. 874, 148 So.2d 584 (1963); 6 Rohan, Zoning and Land Use Controls § 35.04 (1991); see also City of New Orleans v. Board of Commissioners, 93-0690, p. 32 (La. 7/5/94), 640 So.2d 237, 254-55 (remanding for determination of these issues).
Additionally, the trial court did not reach the arguments raised by intervenor, T.L. James and Company, Inc., that (1) the St. Charles Parish Home Rule Charter and general state law do not authorize the parish president to veto a zoning ordinance, and (2) the parish president's veto was an abuse of his discretion because it was arbitrary and capricious. These issues are more appropriately adjudicated in the first instance by the trial court following full briefing and argument. The trial court should closely scrutinize any argument that the parish president acted ultra vires in vetoing the rezoning ordinance in light of La. Const. art. VI, § 6, La.Rev.Stat.Ann. § 33:4780.50 (West Supp. 1994), and Francis v. Morial, supra. The trial court additionally should consider whether the claim that the parish president abused his discretion in vetoing the ordinance presents a political question that the separation of powers places beyond the ambit of judicial review. See, e.g., Japan Whaling Association v. American Cetacean Society, 478 U.S. 221, 230, 106 S.Ct. 2860, 2865-66, 92 L.Ed.2d 166 (1986); Baker v. Carr, 369 U.S. 186, 217, 82 S.Ct. 691, 710, 7 L.Ed.2d 663 *1319 (1962); Murrill v. Edwards, 613 So.2d 185 (La.App. 1 Cir.1992); see also INS v. Chadha, 462 U.S. 919, 946-48, 103 S.Ct. 2764, 2782-83, 77 L.Ed.2d 317 (1983) (discussing importance of qualified executive veto in balance of political power); Burstein v. Morial, 438 So.2d 554, 557-58 (La.1983) (same).
For the reasons assigned, the declaration of unconstitutionality is reversed and the judgment ordering a preliminary injunction to issue is vacated. The case is remanded to the trial court for further proceedings consistent with this opinion.
NOTES
[*] Judge William Norris, III, Court of Appeal, Second Circuit, sitting by assignment in place of Justice Pike Hall, Jr. Pursuant to Rule IV, Part 2, § 3, Marcus, J., was not on the panel that heard and decided this case.
[1] In pertinent part, Ordinance 93-10-9 provides:

WHEREAS, Chapter 9 of Title 4 of the Louisiana Revised Statutes of 1950, R.S. 4:501 through 4:562, provides for Riverboat Gambling in Louisiana on certain bodies of water and rivers; and,
* * * * * *
WHEREAS, local government is prohibited from licensing or regulating the operation of riverboats and the gaming operation conducted thereon; and
WHEREAS, it is not the intent of this ordinance to regulate the riverboat operation or the gaming operation conducted on them; and,
WHEREAS, it is the intent of this ordinance to regulate the land use in St. Charles Parish to promote the well being of our communities. THE ST. CHARLES PARISH COUNCIL HEREBY ORDAINS:
* * * * * *
SECTION I. That the St. Charles Parish Code of Ordinances, Appendix A, Section V.1., is hereby amended to state as follows:
1. For the purpose of promoting the public health, safety, morals, and general welfare to the Parish of St. Charles, Louisiana, said Parish is hereby divided into the following types of districts.
ZONING DISTRICTS
* * * * * *
G-1 Gambling District
* * * * * *
SECTION II. That the St. Charles Parish Code of Ordinances, Appendix A, Section VI. G., is hereby amended to state as follows:
G. Gambling DistrictThe regulations in the Gambling District are as follows
Policy Statement: This district shall be limited to those areas located on batture property in St. Charles Parish. The District regulations are designed to protect the residential and commercial character of the areas by prohibiting Riverboat Gambling development and their support facilities from locating on properties other than batture property in St. Charles Parish.
[2] The docking site is currently zoned B-1 (Non-Industrial Batture District) and B-2 (Industrial Batture District) pursuant to the St. Charles Parish Ordinance of 1981. In July 1994, SCGC applied for a change of zoning district with the Planning and Zoning Department of St. Charles Parish to cover the initial 23-acre portion of the docking site. SCGC amended its application in August 1994, to include the additional 9 acres of the docking site.

The Planning and Zoning Commission recommended approval of the application by a vote of 4-3 on September 1, 1994. The Parish Council on September 6, 1994, approved by a vote of 5-4 the request for rezoning by Ordinance No. 94-9-2. On September 9, 1994, Parish President, Chris Tregre, the appellant herein, vetoed the rezoning ordinance. The Parish Council subsequently failed to override the President's veto.
[3] La. Const. art. VII, § 6(B) provides that "[g]ambling shall be defined and suppressed by the legislature."
[4] Under La.Rev.Stat.Ann. § 14:90(D) (West Supp.1994), "[t]he intentional conducting or assisting in the conducting of gaming activities upon a riverboat as defined and authorized in R.S. 4:501 through R.S. 4:562, whereby a person risks the loss of anything of value in order to realize a profit is not gambling and shall not be suppressed by any state or local law enforcement officer."
[5] Louisiana is one of the few states whose constitution specifically grants to local governmental bodies the authority to regulate land use, zoning and historic preservation. La. Const. art. VI, § 17; City of New Orleans v. Board of Commissioners, 93-0690, p. 37 (7/5/94), 640 So.2d 237, 256 (citing 6 Rohan, Zoning and Land Use Controls, § 35.03[2]). Article VI, Section 17 of the 1974 Constitution provides in pertinent part:

Section 17. Subject to uniform procedures established by law, a local governmental subdivision may (1) adopt regulations for land use, zoning, and historic preservation, which authority is declared to be a public purpose....
[6] Section 627(A) of the Casino Act provides that "Corporation operations are exempt from and no political subdivision may enact any measure to require licensing, to regulate, to impose fees, or to tax corporation operations." La.Rev.Stat. Ann. § 4:627(A) (West Supp.1994).
[7] Because we decide here that the Riverboat Gaming Act does not deny zoning and land use powers to local governments, we do not need to reach the issue urged by amicus curiae of whether the state legislature is empowered to limit or deny the express constitutional grant of this authority to all local governments by any act less imperative than an exercise of the state's police power necessary to protect the vital interest of the state as a whole.