Dear Mr. Dupuis:
This office is in receipt of your opinion request wherein you ask us to consider what course of action the Lafayette City-Parish Consolidated Government may take regarding the future of the parish Library Board of Control. As noted in your request, state law has provided for the creation of Library Boards of Control in LSA-R.S. 25:211, et seq. These statutes pertinently provide:
 § 211. Establishment by parishes or municipalities
 The governing authority of any parish or municipal corporation, the City of New Orleans and Parish of Orleans excepted, may of its own initiative create, establish, equip, maintain, operate and support a public library in such parish or municipality and shall create, establish, equip, maintain, operate and support such a public library when not less than twenty-five percent of the duly qualified property taxpayers resident in such parish or municipality shall petition the governing authority thereof to establish such a public library for such parish or municipality. (Emphasis added).
* * * * *
 § 212. Ordinances creating library; place of establishment; branch libraries
 A public library under this Part shall be created by an ordinance regularly passed and adopted by the police jury of the parish, or other governing authority thereof, and the municipal council or other governing authority of such municipality. All parish libraries shall be established at the parish seat and the municipal libraries within the corporate limits of the municipality so creating and establishing them. Provided that branch libraries may be established and maintained by either a parish or municipal library as the public demands require.
* * * * *
 § 214. Board of control; members; appointment and terms of office
* * * * *
 B. The governing authority of the parish shall, in the ordinance creating a public library, name and appoint, at its option, not less than five citizens nor more than seven citizens of the parish as a board of control for such parish library to serve for terms of one, two, three, four, and five years, the successors of whom shall each be appointed for a term of five years. The president of the police jury shall be ex officio, a member of the board of control for such public library, provided, however, that the president of the police jury shall have the right to designate another member of the governing authority of the parish to serve in his place and stead on the board of control of such public library.
The original ordinance adopted by the Lafayette Parish Police Jury to create a public library and establish a governing board of control, Ordinance No. 11 of 1940, is virtually identical to LSA-R.S. 25:214, as the ordinance was based on that authority.
The newly consolidated government, which has adopted a home rule charter form of government, seeks to alter the status of the Board of Control. The first option being considered by the government is making the Library a division of the government. The second option being considered is reorganizing the Library Board of Control by changing the number of members, the method of appointment, the terms of appointment, term limitations and other requirements.
Under Section 7-07 of the newly adopted Lafayette City-Parish Consolidated Government Home Rule Charter, which pertains "to boards and commissions created by ordinance or in accordance with general state law", the charter provides:
 D. Members of all existing administrative boards and commissions shall complete their terms of office, except as may be provided by this charter or by action of the council.
 F. The council may, by ordinance, create, consolidate, merge, abolish or reorganize any administrative boards or commissions in existence at the date this charter becomes effective or as may be created in the future.
The Library Board of Control is such an administrative board "created by ordinance or in accordance with general state law." However, at issue with respect to either course of action, is whether such actions would impermissibly infringe on the state's authority to legislate in this area.
Article VI § 5 (E) of the 1974 Louisiana Constitution provides:
 (E) Structure and Organization; Powers; Functions. A home rule charter adopted under this Section shall provide the structure and organization, powers, and functions of the government of the local governmental subdivision, which may include the exercise of any power and performance of any function necessary, requisite, or proper for the management of its affairs, not denied by general law or inconsistent with this constitution.
This section applies to all home rule charters adopted subsequent to the Louisiana Constitution of 1974. Exactly how much power a home rule government is allowed to wield under this provision has been the subject of numerous Attorney General Opinions and has also been recently litigated.
Examining the distinction between home rule charter governments adopted subsequent to the enactment of the 1974 Constitution, the Supreme Court has stated:
 Accordingly, Article VI, § 4 limits a preexisting home rule charter's grant of initiation only by providing that the local government may not exercise that power inconsistently with the 1974 constitution. In contrast, a local governmental subdivision that acquires home rule powers subsequent to the adoption of the 1974 constitution is authorized to exercise such powers only when "necessary, requisite, or proper for the management of its affairs." La. Const. 1974, Art. VI, § 5 (E), 7. In this respect, therefore, a preexisting home rule city or parish potentially enjoys the power to initiate legislation to a greater degree than other local governmental subdivisions. See City of New Orleans vs. Board of Commissioners of the Orleans Levee District, 640 So.2d 237, (La. 1994); at page 243.
In the case of St. Charles Gaming Company, Inc. vs. RiverboatGaming Commission, 648 So.2d 1310 (La. 1995), the Supreme Court had further opportunity to examine the legality of an ordinance adopted under the regime of a post-1974 home rule charter government:
 Thus, a valid ordinance of a post-1974 home rule charter government is constitutionally protected against reversal by the legislature except by general state laws that deny, rather than merely conflict with, the local law. St. Charles Gaming Company, Inc., supra, 648 So.2d at page 1315.
Having examined the pertinent provisions of the home rule charter cited hereinabove, we conclude that nothing in the general state law governing library boards denies the governing authority the right to reorganize and restructure the board as it deems necessary. We also find constitutional authority for this endeavor pursuant to LSA-Const. Art VI, § 15 (1974) providing:
 § 15. Local Governmental Subdivisions; Control Over Agencies
 Section 15. The governing authority of a local governmental subdivision shall have general power over any agency heretofore or hereafter created by it, including, without limitation, the power to abolish the agency and require prior approval of any charge or tax levied or bond issued by the agency.
Accordingly, it is our opinion that either option selected by the governing authority concerning the library board is permissible in that neither action is denied by statute law as per Article VI
§ 5 (E) of the Louisiana Constitution; and we find further support via Article VI, § 15 allowing the governing authority to abolish the agency it creates.
We further find the following language of Attorney General Opinion 90-607 (A) to be applicable:
 Additionally, we do not interpret R.S. 25:211, et seq. as an intended legislative limitation on the powers of Home Rule governments. As noted earlier, Home Rule governments have plenary powers which are only limited by the constitution and legislation. Included in this plenary power would be the power to establish libraries. Thus, R.S. 25:211, et seq. is unnecessary to empower Home Rule governments to create libraries.
 Local governments, other than home rule forms, however, do not have plenary powers, but have only those powers specifically provided by the legislature. Thus R.S. 25:211, et seq. is necessary for those governments to establish libraries.
 A mere reading of R.S. 25:211, et seq. suggests that it was to authorize the establishment of libraries, which authorization was not needed by Home Rule governments. The thrust of the legislation is to give authority to those governments who needed it, and not to limit the powers of those who already possessed it.
 R.S. 25:211, et seq. also cannot be construed as a conditional limitation on the power of the Home Rule government. For the legislature to attempt to authorize a Home Rule government to exercise powers only in a certain manner would violate Article V Section 6's prohibition against interference with the structure and organization of the local government.
 Finally, with the enactment of the Louisiana Constitution of 1974, the relationship between the legislature and home rule governments has changed, with the home rule governments obtaining a greater degree of insulation from legislative influence. The Louisiana Supreme Court, in Francis v. Morial, 455 So.2d 1168, (LA. 1984), noted:
 "Home rule entities must be regarded as more than creatures of the legislature, since their powers and functions are granted directly by the constitution and their discretion of deployment is constitutionally preserved against undue interference. Home rule abilities and immunities are bestowed by the constitution in terms too full and general to warrant narrow construction of them by the courts. The framers also regarded principles which courts have developed in accommodating individual rights with the state's exercise of its police power as analogously applicable to the resolution of conflicts between police measures and the new constitutionally protected rights of home rule governments. This transformation in the constitutional philosophy of local government calls for a corresponding adjustment in the judicial attitude toward home rule prerogatives. Hence, it is appropriate that home rule powers, functions and immunities should be construed fairly, genuinely and reasonably and any claimed exception to them should be given careful scrutiny by the courts." 455 So.2d, at 1173.
 Construing R.S. 25:211, et seq., as simply authorizing creation of libraries by local governments that had no such authority independently is a fair and reasonable interpretation of those statutory provisions. It does not prohibit or restrict the operation of library systems where no such authority is needed.
We pretermit discussion of the Attorney General Opinions referenced in your request, as those opinions are limited to the particular factual circumstances involved in those requests, however, we recall Attorney General Opinion 90-607 as inconsistent with Attorney General Opinion 90-607 (A) and our current legal conclusion drawn herein.
Very truly yours,
 RICHARD P. IEYOUB ATTORNEY GENERAL
BY: __________________________ KERRY L. KILPATRICK ASSISTANT ATTORNEY GENERAL KLK:ams