Dear Mayor Price:
We are in receipt of your opinion request concerning a proposal to amend the Mandeville home rule charter to provide for term limits in the offices of council member and mayor. Such an ordinance was introduced by the city council, but failed. Presently, there is an effort to circulate a petition to obtain the required signatures to amend the charter provisions to provide for said term limitations. You ask a series of questions concerning the proposed amendment to impose term limitations.
First and foremost, note that this amendment would be illegal because the terms of the charter specifically prohibit this legislation by citizen referendum. The initiative and referendum provisions are found in Section 6-01 of the charter, providing:
 The electors of the city shall have the power, except as herein restricted, to propose to the council passage or repeal of ordinances and to vote on the question if the council refuses action. This power shall not extend to the proposing or repealing of ordinances making or reducing the appropriation of money, to the repealing or reducing of the levy of any taxes, to the establishing or modifying of fees and charges for city services, reducing the term of elected officials, changing the salaries of city officers or employees, + incurring or reducing indebtedness, or making changes in zoning. The initiative power shall be exercised in the following manner . . . . (Emphasis added).
The real issue would become whether or not such a charter provision placing such a limitation on the voters is valid. Based on the following constitutional authority, we conclude that the provision is permissible.
Article VI, '4 of the Constitution is applicable to home rule charter governments adopted prior to 1974, and provides:
'4. Existing Home Rule Charters and Plans of Government
 Section 4. Every home rule charter or plan of government existing or adopted when this constitution is adopted shall remain in effect and may be amended, modified, or repealed as provided therein. Except as inconsistent with this constitution, each local governmental subdivision which has adopted such a home rule charter or plan of government shall retain the powers, functions, and duties in effect when this constitution is adopted. If its charter permits, each of them also shall have the right to powers and functions granted to other local governmental subdivisions.
Article VI '5 (E) of the 1974 Louisiana Constitution provides:
 (E) Structure and Organization; Powers; Functions. A home rule charter adopted under this Section shall provide the structure and organization, powers, and functions of the government of the local governmental subdivision, which may include the exercise of any power and performance of any function necessary, requisite, or proper for the management of its affairs, not denied by general law or inconsistent with this constitution.
This section applies to all home rule charters adopted subsequent to the Louisiana Constitution of 1974.
Examining the distinction between home rule charter governments adopted subsequent to the enactment of the 1974 Constitution, the Supreme Court has stated:
 Accordingly, Article VI, '4 limits a preexisting home rule charter's grant of initiation only by providing that the local government may not exercise that power inconsistently with the 1974 constitution. In contrast, a local governmental subdivision that acquires home rule powers subsequent to the adoption of the 1974 constitution is authorized to exercise such powers only when A necessary, requisite, or proper for the management of its affairs. La. Const. 1974, Art. VI, '5 (E), 7. In this respect, therefore, a preexisting home rule charter or city parish potentially enjoys the power to initiate legislation to a greater degree than other local governmental subdivisions. See City of New Orleans vs. Board of Commissioner of the Orleans Levee District, 640 So.2d 237 (La. 1994); at page 244.
In the case of St. Charles Gaming Company, Inc. vs RiverboatGaming Commission, 648 So.2d 1310 (La. 1995), the Supreme Court had further opportunity to examine the legality of an ordinance adopted under the regime of a post-1974 home rule charter government:
 Thus, a valid ordinance of a post-1974 home rule charter government is constitutionally protected against reversal by the legislature except by general state laws that deny, rather than merely conflict with, the local law. St. Charles Gaming Company, Inc., supra, 648 So.2d at page 1315.
Neither the Constitution (nor the Election Code) prohibits this limitation on the exercise of electorate initiative. We conclude that such provision would be valid under the terms of a home rule charter adopted prior to or after the enactment of the 1974 Constitution. The City of Mandeville is a pre-1974 home rule charter municipality, and enjoys a greater degree of legislative initiative.
Having concluded that council enactment is the only legal method in which such a term limitation may be imposed, and noting that the council ordinance failed, your other questions are necessarily rendered moot. However, should the further occurrence be that said limitation is imposed via ordinance by the council, note that our research reflects no prohibition against the limitation of terms for any local governmental officer.
We would also direct your attention to Article VI, § 5 (B) of the Constitution which permits, by electorate petition, the local governing authority to appoint a commission to study and propose amendments to the charter, which could include an amendment to the charter allowing term limits to be imposed by the electorate.
Finally, you are correct in seeking approval from the United States Department of Justice under '5 of the Voting Rights Act of 1965, 42 U.S.C. '1973c. Whenever a state or political subdivision, subject to the Voting Rights Act, enacts or seeks to administer any voting qualification or prerequisite to voting, or standard, practice, or procedure with respect to voting different from that in force or effect on November 1, 1964, the state or political subdivision may file a declaratory judgment action in the United States District Court for the District of Columbia, or make a submission to the United States Attorney General for a determination that said qualification, prerequisite, standard, practice, or procedure does not have the purpose and will not have the effect of denying or abridging the right to vote on account of race or color.
Should you have further questions, please contact this office.
Very truly yours,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 BY: _______________________________ KERRY L. KILPATRICK ASSISTANT ATTORNEY GENERAL
KLK:ams