Dear Mr. Wilkinson:
You inform us that part of the territory of the Greater Baton Rouge Port Commission, on which the commission, a political subdivision of the state, operates a deep water port, falls within the city limits of the City of Port Allen and the Parish of West Baton Rouge. Furthermore, you tell us that the parish, subsequent to the effective date of the 1974 Constitution, adopted a home rule charter and exercises zoning authority over the the territory of the parish. The commission has raised with you the question whether port-owned property is subject to the West Baton Rouge Parish Zoning ordinance and the dictates provided therein. In light of our previous opinions 98-160 and 00-424 and recent jurisprudence from the Supreme Court of Louisiana that appears contrary to some of the conclusions in those opinions, the commission has authorized you to request an attorney general's opinion on the subject.
In light of the explicit wording of La. Const. (1974) art. 6, § 43, dealing with deep-water ports, harbors, and terminal districts, which differs substantially from the wording of La. Const. (1974) art. 6, §38, dealing with levee districts, we think that the case of City of NewOrleans v. Board of Com'rs of Orleans Levee Dist., 93-0690 (La. 7/5/94),640 So.2d 237, might have had a different result if it had involved a deep-water port, harbor, or terminal district, instead of a levee district. [See also St. Charles Gaming Co., Inc. v. Riverboat GamingCom'n, 94-2697 (La. 1/17/95), 648 So.2d 1310, in which only a gaming license was involved.] In our Opinion No. 00-424, we concluded that a business located on the property of the St. Bernard Port Harbor District and operating in part for the benefit of the port did not need a zoning clearance from the parish government. We think that that conclusion was correct, because any new constraint by a local governing authority that in any way limits the pre- existing powers and duties of deep-water ports, harbors, or terminal districts over the use of port property, not given by a two-thirds vote of the Legislature, violates the explicit and unique language of La. Const. (1974) art. 6, § 43. That provision reads:
"§ 43. Port Commissions and Districts
"Section 43. All deep-water port commissions and all deep-water port, harbor, and terminal districts as organized and constituted on January 1, 1974, including their powers and functions, structure and organization, and territorial jurisdiction, are ratified and confirmed and shall continue to exist, except that
 "(1) The legislature by law may grant additional powers and functions to any such commission or district and may create new port commissions or port, harbor, and terminal districts.
 "(2) Only by law enacted by the favorable vote of two-thirds of the elected members of each house, may the legislature consolidate or abolish any such commission or district or diminish, reduce, or withdraw from any such commission or district any of its powers and functions and affect the structure and organization, distribution, and redistribution of the powers and functions of any such commission or district, including additions to or reductions of its territorial jurisdiction.
 "(3) The legislature shall enact laws with respect to the membership of the commissions provided in this Section. Once the law with respect to membership is enacted, it may be changed only by law enacted by the favorable vote of two-thirds of the elected members of each house."
You explain that West Baton Rouge Parish voted themselves a Home Rule Charter, after the adoption of the 1974 Constitution. Hence, it did so under La. Const. (1974) art. 6, § 5, unlike the City of New Orleans, whose Home Rule Charter preceded the 1974 Constitution. For West Baton Rouge Parish to exert a new constraint upon and thereby newly limit the pre-existing powers and functions of a deep-water port, harbor, or terminal district, "is inconsistent with [the 1974] Constitution," La. Const. (1974) art. 6, § 5(E) — i.e., inconsistent with the explicit and unique language of La. Const. (1974) art. 6, § 43.
The same holds true for our Opinion No. 98-160. In that opinion, we concluded that a parish cannot, by simply purporting to amend its home rule charter, unilaterally merge into and under the parish government —i.e., "take over" — a deep-water port, harbor, and terminal district, which is specially protected by this explicit 1974 constitutional provision. We even think that the above cases have no effect on this conclusion and that this conclusion is still correct law in any event.
It should be noted that, in the City of New Orleans case, the Supreme Court of Louisiana explained that the local home rule government's zoning authority was part of the police power of the state, which Article VI, § 17, of the 1974 Constitution had split off and vested in the local government, while retaining the residual police power in the state government, and that since different parts or levels of government were exercising the police power, the result should be "harmony," City of NewOrleans v. Board of Com'rs of Orleans Levee Dist., supra, pp. 25 and 27,640 So.2d at 251 and 252. Indeed, the court emphasized "harmony." According to the court, it was the intention of the constitution that both the core needs of the state's levee districts and the zoning needs of the local government be fulfilled. Harmony results from the fulfillment of both needs. A levee district and most of the state political subdivisions can no longer proceed in a manner that is oblivious to the zoning needs of the local government. It is only when the core needs of the state political subdivision cannot possibly or reasonably be fulfilled in a manner that complies with the local government's zoning provisions that the conflict must be resolved as to which of the two will prevail over the other. Such is the usual case, but we think that La. Const. (1974) art. 6, § 43, provides more explicit and unique protection for the pre-existing powers and functions of a deep-water port, harbor, or terminal district, including its power and function to develop its property as it sees fit to fulfill its legitimate purposes.
In the City of New Orleans case, supra, the essential and core functions of the levee district were not involved.
 "Under the allegations of the petition in the present case, the CNO [City of New Orleans] does not seek to enforce zoning and building ordinances to regulate the OLD's [Orleans Levee District's] primary function of levee construction, flood protection, and marsh or lakebottom reclamation. Nor do the pleadings clearly show that enforcement of the zoning and building ordinances conflict with the state statute that authorizes the OLD to undertake commercial, residential, and recreational development of land within the city. The allegations of the petition fail to disclose any reason that the objects of the statute and the ordinances cannot be harmoniously brought about."
 Id., at pp. 31-32, 640 So.2d at 254 (emphasis added). In that case, the Orleans Levee District constructed a marina, a commercial business, but did not allow the City of New Orleans to enforce zoning codes or construction codes, to issue permits, or to send city code inspectors to the marina construction site to inspect the marina construction, as it was being built, for code compliance. According to the reasoning of the court, had the Orleans Levee District done so, the local government's police power to insure the safety, health, morals, convenience, comfort, prosperity, and general welfare of people in the manner of edifice construction in the city would have been fulfilled, all to the greater benefit of society.
If there cannot be harmony and there is irreconcilable conflict between the usual state political subdivision and the local government's zoning provision, then, in order to prevail, the state political subdivision must show, according to the court, (1) (a) that the local law conflicts with an act of the state legislature that is necessary to protect a vital interest of the state as a whole, (b) that the state statute and the ordinance are incompatible and cannot be effectuated in harmony, and (c) that the protection of such state interest cannot be achieved through alternate means significantly less detrimental to home rule powers and rights; or (2) that the local government has violated well settled principles governing the exercise of the police power [citing Francis v.Morial, 455 So.2d 1168 (La. 1984) ]; or (3) that the local government has exercised its zoning power in an unreasonable, oppressive, arbitrary, or discriminatory manner [citing Four States Realty Co., Inc. v. City ofBaton Rouge, 309 So.2d 659 (La. 1975); Plebst v. Barnwell Drilling Co.,Inc., 243 La. 874, 148 So.2d 584 (1963); 6 Rohan, Zoning and Land Use Controls § 35.04 (1991) ].
The continued operation of deep-water ports and their essential functions, of course, are vital to the stability and growth of the economic well-being of the state as a whole. The intrastate, interstate, and foreign commerce generated by them is huge and supports not only the interests of state government and local governments but also the private industry in this state and in sister states whose commerce traverses this state. Such is the reason for the explicit and additional protection of the powers and functions of deep-water ports, harbors, and terminal districts in La. Const. (1974) art. 6, § 43.
At this early juncture in the development of this jurisprudence, we think that the court is generally trying to strike a balance, to the end that, in essence, the local government and the state political subdivision should be good neighbors. If a local government has a zoning ordinance that promotes the safety, health, morals, convenience, comfort, prosperity, and general welfare of people, the state political subdivision should operate in a manner so as to respect it. But we do not think that the court necessarily means that a local government can attempt to use its zoning power simply to shut down the vital and essential functions of the state political subdivision, as though the local government simply did not wish it to be there. And we think that, in the particular case of a deep-water port, harbor, or terminal district, the explict, unique, and additional protection of the district's pre-existing powers and functions in the constitution itself demands a different result altogether.
We trust that this opinion has adequately answered your specific request. If you have any further questions, please do not hesitate to communicate with us.
With warmest regards, we remain
 Yours very truly, CHARLES C. FOTI, JR. ATTORNEY GENERAL
 BY: ____________________ THOMAS S. HALLIGAN ASSISTANT ATTORNEY GENERAL